PER CURIAM Opinion; Opinion by Judge BYBEE; Concurrence by Judge BERZON; Partial Concurrence and Partial Dissent by Judge RAWLINSON.
OPINION
PER CURIAM:
A majority of the en banc court (Judge Bybee, joined by Judges Rymer, Silver-man, Gould, Rawlinson and Callahan) overrules our prior holding in Navarro-Lopez v. Gonzales, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc), that the modified categori *917 cal approach doesn’t apply “[w]hen the crime of conviction is missing an element of the generic crime altogether.”
A different majority (Judge Bybee, joined by Chief Judge Kozinski and Judges Rymer, W. Fletcher, Berzon, M. Smith and N.R. Smith) overrules our prior decisions to the extent they hold that a conviction under California Penal Code § 459 qualifies as a generic burglary conviction if the defendant pleaded guilty to entering a building “unlawfully” or a jury found the defendant guilty as charged in an indictment reciting that allegation. This majority concludes that Aguila-Montes’s prior conviction under California Penal Code § 459 cannot be used to enhance his sentence.
The district court’s sentence is VACATED, and the case is REMANDED to the original three-judge panel for consideration of the remaining issues raised on appeal.
BYBEE, Circuit Judge:
We granted rehearing in this case to reconsider the rule we adopted in Navarro-Lopez v. Gonzales, 503 F.3d 1063 (9th Cir.2007) (en banc), to govern application of the modified categorical approach.
The categorical and modified categorical frameworks, first outlined by the Supreme Court in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), establish the rules by which the government may use prior state convictions to enhance certain federal sentences and to remove certain aliens. In the twenty years since Taylor, we have struggled to understand the contours of the Supreme Court’s framework. Indeed, over the past decade, perhaps no other area of the law has demanded more of our resources. See, e.g., United States v. Strickland, 601 F.3d 963, 967-71 (9th Cir.2010) (en banc); Marmolejo-Campos v. Holder, 558 F.3d 903, 912-13 (9th Cir.2009) (en banc); United States v. Snellenberger, 548 F.3d 699, 700-02 (9th Cir.2008) (en banc) (per curiam); Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1159-60 (9th Cir.2008) (en banc); United States v. Vidal, 504 F.3d 1072, 1086-90 (9th Cir.2007) (en banc); Navarro-Lopez, 503 F.3d at 1073; United States v. Grisel, 488 F.3d 844, 847-48, 851-52 (9th Cir.2007) (en banc); Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1132-35 (9th Cir.2006) (en banc); United States v. Corona-Sanchez, 291 F.3d 1201, 1211— 13 (9th Cir.2002) (en banc), superseded by U.S. Sentencing Guidelines Manual (“U.S.S.G.”) § 2L1.2 cmt. n. 4 (2002).
In Navarro-Lopez, we stated that “[t]he modified categorical approach ... applies when the particular elements in the crime of conviction are broader than the generic crime.” 503 F.3d at 1073. We then declared:
When the crime of conviction is missing an element of the generic crime altogether, we can never find that “a jury was actually required to find all the elements of’ the generic crime. See Li v. Ashcroft, 389 F.3d 892, 899-901 (9th Cir.2004) (Kozinski, J., concurring) (providing examples).

Id.

Today, we conclude that Navarro-Lopez’s “missing element” rule is not required by the Supreme Court’s modified categorical approach established in Taylor. We overrule that portion of Navarro-Lopez. Applying the modified categorical approach to this case, we nevertheless agree with the panel’s determination that Defendant-Appellant Guillermo Aguila-Montes de Oca’s (“Aguila”) conviction under California Penal Code § 459 does not qualify as a “crime of violence” under either the categorical or modified categorical approach. Accordingly, we vacate the district court’s sentence and remand to the original three-judge panel for consider *918 ation of the remaining issues Aguila raised on appeal.
I
Aguila is a native and citizen of Mexico. On July 5, 2004, Aguila attempted to enter the United States at the San Ysidro, California, point of entry. Customs officers determined by computer that Aguila had been previously deported from the United States, and arrested him. The government charged Aguila in the Southern District of California with illegal reentry after deportation, in violation of 8 U.S.C. § 1326. A jury convicted him, and the district court sentenced Aguila to 120 months in prison and two years of supervised release.
During sentencing, the district court determined that, in 1988, Aguila had pled guilty to first degree residential burglary, in violation of California Penal Code § 459. That statute punishes “[e]very person who enters [various structures] ... with intent to commit grand or petit larceny or any felony.” CAL. PENAL CODE § 459. Based on this prior offense, the district court enhanced Aguila’s sentence under U.S.S.G. § 2L1.2, which provides a sixteen-level enhancement for defendants previously deported after “a conviction for a felony that is ... a crime of violence.” U.S.S.G. § 2L1.2(b)(l)(A). The Guidelines’ Application Notes specifically define “crime of violence” to include “burglary of a dwelling.” Id. § 2L1.2 cmt. n. l(B)(iii). The district court held that Aguila’s California burglary conviction qualified as “burglary of a dwelling” and accordingly enhanced his sentence by sixteen levels.
Aguila appealed his sentence,[1] and we first affirmed the district-court’s sentence but then withdrew that opinion on rehearing and reversed. See United States v. Aguilar-Montes de Oca, 523 F.3d 1071 (9th Cir.2008) (“Aguila I”), withdrawn and replaced by United States v. Aguila-Montes de Oca, 553 F.3d 1229 (9th Cir. 2009) (“Aguila II ”). In Aguila I, applying the two-part approach outlined in Taylor, we first held that the California burglary statute is categorically broader than the generic definition of “burglary of a dwelling” because the statute “does not require that the entry be unlawful or unprivileged.” Aguila I, 523 F.3d at 1076 (quotation marks omitted). In a footnote, we then distinguished Navarro-Lopez based on the reasoning that, in Aguila’s case, “both the crime of conviction and the generic crime have the same basic elements.” Id. at 1077 n. 2 (citing People v. Davis, 18 Cal.4th 712, 76 Cal.Rptr.2d 770, 958 P.2d 1083, 1085 (1998) (describing the elements of California’s burglary offense as (1) entry, (2) into any building or other listed structure, (3) with intent to commit larceny or any felony)). Although “generic burglary also requires that the entry be unlawful or unprivileged,” we stated, “[t]his d[id] not ... create an additional element, but merely deseribe[d] one type of entry among many possible entries, including unprivileged, forcible and unauthorized entries.” Id. (quotation marks omitted). Having determined that the California statute was not “missing an element” of the generic crime, Navarro-Lopez, 503 F.3d at 1073, we applied the modified categorical approach and con- *919 eluded that because the documents of conviction, see Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), “reveal[ed] that [Aguila’s] entry was unlawful,” his prior offense “satisfie[d] the generic definition of burglary of a dwelling.” Aguila I, 523 F.3d at 1078.
One year later, we withdrew our Aguila I opinion in Aguila II, and relied entirely on Navarro-Lopez to reverse and remand to the district court to impose a sentence without the sixteen-level enhancement. Aguila II, 553 F.3d at 1234. We did not alter Aguila Ts analysis with respect to the categorical approach. Compare id. at 1233, with Aguila I, 523 F.3d at 1075-76. However, unlike in Aguila I, we determined that generic burglary requires as an element that the entry be “unlawful or unprivileged.” See Aguila II, 553 F.3d at 1234 (characterizing generic burglary as requiring “(1) entry, (2) which is unlawful or unprivileged, (3) into a building or structure, (4) with intent to commit a crime”). In contrast, we noted, the California statute requires only “(1) entry, (2) into any building or other listed structure, (3) with intent to commit larceny or any felony.” Id. We therefore held that, under Navarro-Lopez, we could “not apply a modified categorical approach ... because the state crime of which Aguila-Montes was convicted lacks an element of the generic crime of the Guidelines!,] ... namely, that the entry must have been ‘unlawful or unprivileged.’ ” Id. at 1233-34. Accordingly, we held that the district court erred in characterizing Aguila’s prior offense as a “crime of violence.” Id. at 1234.[2]
On a vote of the majority of nonrecused active judges on our court, we decided to rehear this case en banc.
II
We first review the complex legal framework governing this case, beginning with the relevant Guidelines, the Supreme Court decisions preceding Navarro-Lopez, and ending with our controversial Navarro-Lopez decision.
A
Section 2L1.2 of the Guidelines addresses sentencing for the crime of unlawfully entering or remaining in the United States. It provides a sixteen-level enhancement “[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is ... a crime of violence....” U.S.S.G. § 2L1.2(b)(l). The Guidelines’ Application Notes define “crime of violence” to include “burglary of a dwelling.” Id. § 2L1.2 cmt. n. l(B)(iii). “The sentencing judge’s application of the Sentencing Guidelines, including whether a prior conviction is a ‘crime of violence’ ... for the purposes of U.S.S.G. § 2L1.2, is reviewed de novo.” United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir.2005).
B
To determine whether a prior conviction qualifies as a “crime of violence” under the Guidelines, we use the two-part analytical approach outlined by the Supreme Court in Taylor. See United States v. Wenner, 351 F.3d 969, 972 (9th Cir.2003). In Taylor, the Court addressed the meaning of the word “burglary” in the Armed Career Criminal Act (“ACCA”), which provides a sentence enhancement for a defendant convicted of being a felon in possession of *920 a firearm who “has three previous convictions by any court ... for a violent felony,” 18 U.S.C. § 924(e)(1), and defines “violent felony” to include, among other things, “burglary,” id. § 924(e)(2)(B)®.
The Court determined that “ ‘burglary’ in § 924(e) must have some uniform definition independent of the labels employed by various States’ criminal codes,” in order to “proteet[ ] offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction.” Taylor, 495 U.S. at 589, 592, 110 S.Ct. 2143. After discussing the text and legislative history of the statute, the Court found “that Congress meant ... ‘burglary’ [in] the generic sense in which the term is now used in the criminal codes of most States.” Id. at 598, 110 S.Ct. 2143. The Court held that this “generic” definition of burglary “ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.” Id. at 599, 110 S.Ct. 2143.
This determination left the Court with “the problem of applying this conclusion to cases in which the state statute under which a defendant is convicted varies from the generic definition of ‘burglary’” — for example, when a state burglary statute “eliminat[es] the requirement that the entry be unlawful or ... includ[es] places, such as automobiles and vending machines, other than buildings.” Id. The Court “had to consider how a later court sentencing under the ACCA might tell whether a prior burglary conviction was for the generic offense.” Shepard, 544 U.S. at 17, 125 S.Ct. 1254. At the same time, the Court was concerned that if this determination was made based on the particular facts underlying the defendant’s prior conviction, the result would be a series of time-consuming “mini-senteneing-trials featuring opposing witnesses perusing lengthy transcripts of prior proceedings.” Id. at 36, 125 S.Ct. 1254 (O’Connor, J., dissenting) (citing Taylor, 495 U.S. at 601, 110 S.Ct. 2143).
The Taylor Court’s solution to this problem was what it referred to as the “categorical approach,” in which a court looks “not to the particular facts underlying [the defendant’s prior] convictionf ],” but “only to the fact of conviction and the statutory definition of the prior offense,” in order to determine whether the state statute could potentially criminalize conduct that would not qualify as a “violent felony.” Taylor, 495 U.S. at 600, 602, 110 S.Ct. 2143; see also Begay v. United States, 553 U.S. 137, 141, 128 S.Ct. 1581,170 L.Ed.2d 490 (2008) (observing that, under the categorical approach, the offense is to be considered “generically, that is to say, ... in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion”).
The Court then held that “[t]his categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary.” Taylor, 495 U.S. at 602, 110 S.Ct. 2143 (emphasis added). Under this analysis, which the Court later called a “modified categorical approach,” Nijhawan v. Holder, - U.S. -, 129 S.Ct. 2294, 2302, 174 L.Ed.2d 22 (2009), if “the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant,” then a sentence enhancement under § 924(e) would be appropriate, Taylor, 495 U.S. at 602,110 S.Ct. 2143.
Taylor itself dealt with a conviction in a jury trial, but in Shepard, the Court held that Taylors framework applies to guilty pleas as well. See Shepard, 544 U.S. at 19, 125 S.Ct. 1254. In Shepard, the Court *921 also elaborated on what documents a court may consider under the modified categorical approach in order to determine whether a guilty plea to an offense defined by a nongeneric statute “necessarily admitted elements of the generic offense.” Id. -at 26,125 S.Ct. 1254. The Court rejected the government’s contention that the sentencing court may look at police reports and complaint applications to determine what a guilty plea “necessarily admitted,” and held that, under the modified categorical approach, a court may look only to: (1) charging documents; (2) the terms of a written plea agreement; (3) transcripts of a plea colloquy between a judge and the defendant in which the factual basis for the plea was confirmed by the defendant; (4) jury instructions; (5) any explicit factual finding by the trial judge to which the defendant assented; and (6) some comparable judicial record of this information. See id. at 16, 26, 125 S.Ct. 1254; id. at 25-26, 125 S.Ct. 1254 (plurality opinion). A plurality of the Court expressed concern that “allowing a broader evidentiary enquiry” would permit the sentencing court to make “disputed finding[s] of fact,” thus raising concerns under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Shepard, 544 U.S. at 24-25, 125 S.Ct. 1254. The plurality stated that these concerns “counsel!] us to limit the scope of judicial factfinding on the disputed generic character of a prior plea” to those documents reflecting what the jury found (including “a charging document that narrows the charge to generic limits” and jury instructions), bench trial findings and rulings, or “the defendant’s own admissions or accepted findings of fact confirming the factual basis for a valid plea.” Id. at 25, 125 S.Ct. 1254 (plurality opinion).
The Court more recently developed the Taylor/Shepard framework in Nijhawan v. Holder, — U.S.-, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009), and Johnson v. United States, — U.S.-, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). In Nijhawan, the court interpreted 8 U.S.C. § 1101(a)(43)(M)(i), which identified as an aggravated felony “an offense that ... involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.” 129 S.Ct. at 2297- At issue was whether the $10,000 threshold referred to an element of a fraud statute or the factual circumstances surrounding a specific fraud conviction. Id. at 2298. The Court held that the provision “calls for a ‘circumstance-specific,’ not a ‘categorical,’ interpretation,” id. at 2300, and also rejected application of the modified categorical approach, holding that in determining whether a previous conviction met the $10,000 threshold, the immigration court did not need to observe the evidentiary limitations articulated in Shepard, id. at 2303. In effect, Nijhawan suggested that statutes like § 1101(a)(43)(M)(i) could be applied in one of three ways, depending on how the statute was interpreted: using the categorical approach or modified categorical approach to the extent the statute refers to generic crimes, and using a fact-specific approach when the statute refers to “the specific circumstances in which a crime was committed.” 129 S.Ct. at 2301.
In Johnson, the Court confronted the question of whether a Florida battery conviction constituted a violent felony under 18 U.S.C. § 922(g)(l)(i), which encompasses “any crime punishable by imprisonment for a term exceeding one year ... [that] has as an element the use, attempted use, or threatened use of physical force against the person of another.” 130 S.Ct. at 1268. For the most part, the opinion focuses on the meaning of the term “physical force.” See id. at 1270-73. However, the Court mentioned the modified categorical approach in response to the government’s concern that the Court’s narrow interpretation of “physical force” would undermine the government’s ability to obtain removal based on battery convictions. Id. at 1273. *922 The Court reminded the government that it could rely on the modified categorical approach in cases where “the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not.” Id. But in such cases, a court may consult the trial record “to determine which statutory phrase was the basis for the conviction.” Id.
We have extended the Taylor/Shepard framework well beyond the question of whether a state burglary conviction qualifies as generic burglary under the ACCA. In the criminal context, we have, among other things, used the framework to determine whether other crimes qualify as a “violent felony” under the ACCA, see, e.g., United States v. Terrell, 593 F.3d 1084, 1091 (9th Cir.2010) (holding that sexual assault under Arizona law is a “violent felony”), and whether certain crimes qualify a defendant for a “crime of violence” enhancement under the Sentencing Guidelines, see, e.g., Wenner, 351 F.3d at 972. We have also used the Taylor/Shepard framework in the immigration context to determine whether an alien is removable as a result of having been convicted of an “aggravated felony” under 8 U.S.C. § 1101(a)(43), see, e.g., Rivera-Cuartas v. Holder, 605 F.3d 699, 701-02 (9th Cir. 2010); of a crime “relating to a controlled substance” under 8 U.S.C. § 1227(a)(2)(B)®, see, e.g., Mielewczyk v. Holder, 575 F.3d 992, 994 (9th Cir.2009), or of a “crime[ ] involving moral turpitude” under 8 U.S.C. § 1227(a)(2)(A)(ii), see, e.g., Fernandez-Ruiz v. Gonzales, 468 F.3d 1159, 1163 (9th Cir.2006). Thus, our conclusion as to precisely when the modified categorical approach may be applied will have wide repercussions beyond the limited issue in this case.
C
Before Navarro-Lopez, our cases drew no distinction between different kinds of statutes in terms of when the modified categorical approach could be applied. We simply applied the categorical approach and, even if we determined that the offense of conviction was missing an element of the generic crime, we then applied the modified categorical approach without any inquiry as to whether the approach should be applied.[3] In Rodriguez-Rodriguez, for *923 example, we applied the modified categorical approach to the precise statute at issue in this case: California Penal Code § 459. See 393 F.3d at 857-58. After concluding that California’s first-degree residential burglary offense does not qualify categorically as generic burglary because it “do[es] not require ‘unlawful or unprivileged entry’ for a burglary conviction,” we applied the modified categorical approach and “conclude[d] that [defendant] was convicted of a ‘burglary of a dwelling’ ” because he “pled guilty to ‘willfully and unlawfully entering] a building with the intent to commit theft.’” Id. (fourth alteration in original).
Navarro-Lopez overruled all of these decisions sub silentio and in a two-paragraph analysis. In Navarro-Lopez, we addressed the question of whether a conviction under California Penal Code § 32 for accessory after the fact was a crime involving moral turpitude. See 503 F.3d at 1065. Most of our opinion was devoted to holding that the California offense was not categorically a crime of moral turpitude. See id. at 1067-73.
Then, after noting that the next step in our analysis would normally be to apply the modified categorical approach, we announced:
The modified categorical approach, however, only applies when the particular elements in the crime of conviction are broader than the generic crime. When the crime of conviction is missing an element of the generic crime altogether, we can never find that “a jury was actually required to find all the elements of’ the generic crime. See Li v. Ashcroft, 389 F.3d 892, 899-901 (9th Cir.2004) (Kozinski, J., concurring) (providing examples).
Accessory after the fact under California Penal Code section 32 lacks an element of the generic crime — i.e., the moral turpitude, the requisite depravity. The crime of conviction can never be narrowed to conform to the generic crime because the jury is not required — as Taylor mandates — to find all the elements of the generic crime. Even if Navarro-Lopez had admitted to depraved acts, those admissions could not be used to modify the crime because they were not necessary for a conviction. See Shepard!, 544 U.S. at 24, 125 S.Ct. 1254].... The modified categorical approach thus cannot be used to conform Navarro-Lopez’s accessory after the fact conviction to the generic definition of crimes involving moral turpitude.
Navarro-Lopez, 503 F.3d at 1073 (emphasis added) (footnote omitted).
Ill
We find good reason to question our holding in Navarro-Lopez with respect to the modified categorical approach. As will become evident in our analysis below, the issue of when to apply the modified categorical approach is a difficult one. Yet Navarro-Lopez disposed of this issue in two paragraphs with a single citation to a concurring opinion. With this sparse analysis, Navarro-Lopez overruled almost two decades of our jurisprudence.
Moreover, because of the manner in which Navarro-Lopez summarily announced its novel legal principle, we have witnessed a number of false starts and conflicting decisions within our Circuit.[4] *924 And several judges of our court have written separately to criticize Navarro-Lopez. See, e.g., Aguila II, 553 F.3d at 1234 (Gould, J., dissenting); Aguilar-Turcios v. Holder, 582 F.3d 1093, 1102-11 (9th Cir. 2009) (Bybee, J., dissenting); Kawashima v. Mukasey, 530 F.3d 1111, 1119-24 (9th Cir.2008) (O’Scannlain, J., specially concurring), abrogated by Nijhawan, 129 S.Ct. 2294, withdrawn and superseded by Kawashima v. Holder, 615 F.3d 1043 (9th Cir.2010).
We believe that it is time to reconsider the rule announced in Navarro-Lopez with the diligence appropriate for an issue of this complexity and magnitude.
IV
The purpose of the modified categorical approach is to determine whether the trier of fact “ ‘was actually required to find all the elements of the generic offense” before enhancing the defendant’s sentence based on a state conviction. Shepard, 544 U.S. at 17, 125 S.Ct. 1254 (quoting Taylor, 495 U.S. at 602, 110 S.Ct. 2143). Or, as the Supreme Court has described it, the question is whether the defendant’s prior conviction “ ‘necessarily’ rested on[ ] fact[s] identifying the [crime] as generic.” Id. at 21, 125 S.Ct. 1254 (quoting Taylor, 495 U.S. at 602,110 S.Ct. 2143). Our task is to determine what these rules mean and whether, as Navarro-Lopez held, these rules entirely preclude the application of the modified categorical approach to certain kinds of state statutes.
Navarro-Lopez effectively segregated state criminal statutes into two classes. First, it acknowledged that application of the modified categorical approach was permissible when a prior conviction resulted from what we will call “divisible statutes.” A divisible statute contains a list of statutory phrases, at least one of which satisfies an element of a given generic crime.[5] For example, Taylor’s, generic burglary definition requires that the defendant enter into a “building or structure.” 495 U.S. at 599, 110 S.Ct. 2143. We have interpreted Taylor’s “building or structure” element to mean “a structure designed for occupancy that is intended for use in one place.” Grisel, 488 F.3d at 848. California Penal *925 Code § 459, the residential burglary statute under which Aguila was convicted, contains a list of structures, at least one of which the defendant must enter in order to be convicted of burglary. Some of these structures, such as a “house,” “shop,” or “warehouse,” satisfy Taylor*s “building or structure” element. However, other structures listed in the California statute, such as “floating home,” “railroad car,” and “trailer coach,” are not “intended for use in one place,” Grisel, 488 F.3d at 848, and therefore do not meet Taylor’s definition of “building or structure.” Thus, Califor'nia Penal Code § 459 is a “divisible statute” in the sense that it contains a list of several kinds of structures, only some of which satisfy the generic crime.
Navarro-Lopez created a second class of state criminal statutes: those that are “missing an element of the generic crime altogether.” A statute can be “missing an element of the generic crime” in two ways. In some cases, the state offense contains an element that encompasses the generic element but covers a broader range of conduct than the generic element. For example, the Guidelines’ “crime of violence” definition, in addition to “burglary of a dwelling,” also includes “statutory rape.” U.S.S.G. § 2L1.2 cmt. n. l(B)(iii). In United States v. Rodriguez-Guzman, 506 F.3d 738 (9th Cir.2007), we held that the generic definition of “statutory rape” requires that the victim be under the age of sixteen. Id. at 746. We then held that California Penal Code § 261.5(c), which criminalizes “an act of unlawful sexual intercourse with a minor,” with “minor” defined as “a person under the age of 18 years,” CAL. PENAL CODE § 261.5(a), does not qualify categorically as “statutory rape” because it establishes eighteen rather than sixteen as the age of consent. Rodriguez-Guzman, 506 F.3d at 746. Thus, California Penal Code § 261.5(c) is an example of a “broad element” statute: although it contains an “age” element, that element covers a broader range of conduct (specifically, victims between the ages of sixteen and eighteen) than the generic element does.
In other cases, the criminal statute altogether lacks an element of the generic crime. For example, in Estradar-Espinoza v. Mukasey, 546 F.3d 1147 (9th Cir.2008) (en banc), we addressed whether “any of four California statutory rape provisions ... constitutes the aggravated felony ‘sexual abuse of a minor’ within the meaning of 8 U.S.C. § 1101(a)(43).” Id. at 1150. We defined “sexual abuse of a minor” by reference to the federal statutory rape statute, 18 U.S.C. § 2243, and held that this definition contains “four elements: (1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor.” Estradar-Espinoza, 546 F.3d at 1152 (emphasis added). We found that three of the four California statutory rape offenses at issue “are missing the fourth element of the generic statute: an age difference of at least four years between the defendant and the minor,” and therefore held that we could not apply the modified categorical approach to these statutes under Navarro-Lopez. See Estrada-Espinoza, 546 F.3d at 1159; see also, e.g., CAL. PENAL CODE § 286(b)(1) (“[A]ny person who participates in an act of sodomy with another person who is under 18 years of age shall be punished.... ”).
It is worth noting that the distinction between the “broad element” and “missing element” cases is only of limited conceptual use and has no legal significance. In both situations, “the crime of conviction is missing an element of the generic crime,” precluding resort to the modified categorical approach under the Navarro-Lopez rule. 503 F.3d at 1073. Indeed, it is difficult, if not impossible, to conclusive *926 ly determine whether a criminal statute has a broad element or is missing an element altogether. For example, if a statute of conviction punishes possession of pornography, but a federal statute imposes a sentence enhancement for possession of child pornography, the statute of conviction could be characterized either as containing the “broad” element of pornography (including both adult and child pornography) or as “missing” the element of involvement of minors. See Aguilar-Turcios v. Holder, 582 F.3d 1093, 1097-98 (9th Cir.2009); id. at 1111-12 (Bybee, J., dissenting). To provide a second example, generic burglary requires entry into a structure with the intent to commit a crime. Taylor, 495 U.S. at 598, 110 S.Ct. 2143. If the statute of conviction provides that burglary involves entry into a structure, but does not specify that the burglar enter with the intent to commit a crime, the statute of conviction is both too broad — because it permits conviction when either the burglar entered with intent to commit a crime or when he entered and subsequently developed the intent to commit a crime, see Aguila I, 523 F.3d at 1076 n. 2 — and is also arguably “missing” the element of simultaneous intent entirely, see Aguila II, 553 F.3d at 1234. This difficulty emphasizes the broader point we develop below: there is no way to draw a principled distinction between a statute that contains a list of elements that includes more than what the generic statute requires, and a statute that is missing the elemental phrase altogether.
To provide a consistent and convenient example to illustrate each of these scenarios, we may hypothesize the following.[6] We begin with a hypothetical federal recidivism statute that enhances a defendant’s sentence if he has been previously convicted of the generic offense of “aggravated assault,” which has two elements: (1) harmful contact and (2) the use of a gun. Imagine further that a defendant has been previously convicted of a state’s “assault” offense. The state assault offense might be categorically broader than generic aggravated assault in one of three ways. If the statute is divisible, the state crime contains a list of several kinds of weapons, at least one of which satisfies the generic crime. Such a crime might have the following elements: (1) harmful contact and (2) use of a gun or an axe. The state offense might also include a “broad element” if it requires (1) harmful contact and (2) use of a weapon (which encompasses a broader range of conduct than use of a gun). Finally, the state crime of conviction might only require harmful contact without requiring the use of any kind of weapon at all.
We conclude that the modified categorical approach encompasses, with certain important restrictions, each of these situations.
A
We first examine why the modified categorical approach is appropriate for divisible statutes. There is no serious dispute that it at least applies to them. If this were not so, the modified categorical approach would have no function whatsoever. When the statute of conviction contains a list of statutory phrases, at least one of which satisfies the generic statute, the modified categorical approach can be used to determine under which statutory phrase the defendant was convicted. If the appropriate documents demonstrate that the defendant was convicted under *927 the statutory phrase satisfying the generic element, then the trier of fact was “actually required” to find that element of the generic crime. To use our hypothetical, if the statute of conviction contains the elements of (1) harmful contact and (2) use of a gun or an axe, the modified categorical approach can be used to determine whether the trier of fact was actually required to find that the defendant used a gun.
In Taylor, the Supreme Court illustrated the modified categorical approach by citing a divisible statute:
[1]n a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.
495 U.S. at 602, 110 S.Ct. 2143. Furthermore, the Court’s recent decisions in Johnson and Nijhawan confirm that the modified categorical approach applies at least to divisible statutes. See Johnson, 130 S.Ct. at 1273 (“When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, ... the ‘modified categorical approach’ that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the [judicially noticeable documents].” (citation omitted)); Nijhawan, 129 S.Ct. at 2303 (modified categorical approach can be used to “determine] which statutory phrase (contained within a statutory provision that covers several different genei’ic crimes) covered a prior conviction”).
B
We now turn to statutes that are “missing an element of the generic crime.” As a conceptual matter, these statutes simply substitute a shorthand phrase for a list of acts or objects covered by that phrase. For example, a statute that requires use of a “weapon” is not meaningfully different from a statute that simply lists every kind of weapon in existence. Using the word “weapon” as an element is not analytically different from creating a list of all conceivable weapons (“gun, axe, sword, baton, slingshot, knife, machete, bat,” and so on). Because we have little difficulty discerning that someone convicted of assault with a “weapon” may have used a gun, the modified categorical approach could apply in the same way it does to a conviction under a divisible statute to determine if the trier of fact was actually required to find that the defendant used a gun. See Li 389 F.3d at 899 (Kozinski, J., concurring) (“The government may ... use the indictment and other documents in the record to prove that, because the jury convicted the defendant [under a hypothetical statute requiring use of a weapon], it must have done so by finding that he used a gun — for instance, if that was the only way that element of the offense was charged in the indictment.”).
Similar logic applies where a statute does not even require a weapon, and only requires harmful contact. If a statute of conviction only requires the element of “harmful contact,” that element in turn is indistinct from a list of all the possible ways an individual can commit harmful contact (“harmful contact with a vehicle, harmful contact with a gun, harmful contact with an axe, harmful contact with a utensil” and so on). The only conceptual difference between a divisible statute and a non-divisible statute is that the former creates an explicitly finite list of possible means of commission, while the latter creates an implied list of every means of commission that otherwise fits the definition of a given crime.
*928 Nonetheless, under existing case law, it is not obvious that the modified categorical approach applies in these missing element cases. We conclude that it does. First, we consider the argument for limiting the modified categorical approach to the divisible statute situation, noting that there is dicta in Nijhawa/n and Johnson that supports this position and that several of our sister circuits have adopted some form of this argument. Second, we explain why, in our view, that argument is inconsistent with the fact that the Supreme Court in Taylor has approved a modified categorical approach. Finally, we find strong support for our interpretation of the modified categorical approach — and further support for our rejection of Aguila’s argument — in the reasoning behind Taylor.
1
The central basis for the argument that the modified categorical approach should be limited to divisible statutes is that, in order to determine whether a defendant’s prior offense qualifies the defendant for a sentencing enhancement or whether an alien’s prior offense renders him removable, it does not matter what acts the defendant committed; rather, the relevant question is what he was convicted of. See Taylor, 495 U.S. at 600, 110 S.Ct. 2143 (justifying the categorical approach based on the fact that the ACCA “refers to ‘a person who ... has three previous convictions’ for — not a person who has committed — three previous violent felonies or drug offenses” (alteration in original) (quoting 18 U.S.C. § 924(e)(1))); Shepard, 544 U.S. at 16, 125 S.Ct. 1254 (clarifying what documents could be used “to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary” (emphasis added)); U.S.S.G. § 2L1.2(b)(l) (imposing a sentence enhancement on defendants convicted of illegal reentry after deportation who were “deported, or unlawfully remained in the United States, after (A) a conviction for a felony that is ... a crime of violence” (emphasis added)); 18 U.S.C. § 924(e)(1) (imposing a fifteen-year mandatory minimum sentence on felons in possession of a firearm who “ha[ve] three previous convictions ... for a violent felony or a serious drug offense” (emphasis added)); 8 U.S.C. § 1227(a)(2)(A)(i) (“Any alien who (I) is convicted of a crime involving moral turpitude committed within five years ... after the date of admission ... is deport-able.” (emphasis added)). Because of this distinction between conviction and commission, under Taylor it does not matter what facts the jury actually found but rather what facts the jury was “actually required to find,” 495 U.S. at 602, 110 S.Ct. 2143 (emphasis added), which are the facts required to establish the defendant’s conviction — that is, the facts on which the conviction “ ‘necessarily’ rested,” Shepard, 544 U.S. at 21, 125 S.Ct. 1254 (quoting Taylor, 495 U.S. at 602, 110 S.Ct. 2143).
The requirement that we focus on what the defendant was convicted of rather than the acts he committed serves two important purposes. First, it confines our inquiry to the fact of conviction and avoids the need to rummage through the “actual proof at trial” to see “whether the defendant’s conduct constituted generic burglary.” Taylor, 495 U.S. at 601, 110 S.Ct. 2143. It therefore avoids the spectacle of a “trial over trials,” in which the government and the defendant reprise their roles, argue over what was litigated in state court, and invite the sentencing court to conduct “its own review of the record.” Id. Second, by relying exclusively on the crime of conviction, we avoid situations where the government arguably could prove that the defendant actually committed a greater offense, one that would satisfy the generic crime, but would deprive the *929 defendant of the benefit of his conviction for (or plea to) a lesser crime. Id. at 601-02, 110 S.Ct. 2143 (“[I]t would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.”).
Aguila, the amici curiae, and other proponents of Navarro-Lopez’s “missing element” rule argue that, if the statute of conviction lacks an element of the generic crime, the defendant was not convicted of the generic crime, regardless of how certain we are that the defendant actually committed the acts composing the generic crime. The reason, they argue, is that a defendant can only be “convicted” if the factfinder determines that each of the elements of the crime was satisfied. If any element of the generic crime is missing from the statute of conviction, we cannot conclude that the defendant was effectively convicted of the generic crime, and everything else is irrelevant. Put another way, to convict, the factfinder is only “actually required” to find the elements of the statute of conviction; if something is not an element, then by definition the jury is not required to find it in order to convict. And put yet another way, a conviction only “necessarily rests” on the elements of the statute of conviction.
Returning to our hypothetical, Aguila would argue that, if the generic aggravated assault statute requires the use of a gun (the “missing element” situation) and a state statute does not, then a defendant convicted under the state statute was not convicted of generic aggravated assault even if he actually used a gun, because again, one can only be “convicted” of having committed the elements of the crime. In this situation, the jury would not be required to find that the defendant used any type of weapon in order to convict him, regardless of whether the jury actually thought that he did in fact use a gun. And in this situation, the fact that the defendant used a gun would, in some sense, not be necessary to the defendant’s conviction.
2
This argument has some force and support. Indeed, the Supreme Court’s own post-Navarro-Lopez decisions in Nijhawan and Johnson provide some support for Navarro-Lopez’s rule. Both cases clearly express approval for applying the modified categorical approach to convictions under divisible statutes. But neither case addressed the issue before us, so we are reluctant to read into approval of the use of the modified categorical approach in the divisible statute context as disapproval of its use with broad or missing element statutes.
The petitioner in Nijhawan argued that, even where a requirement under a generic crime is an attendant circumstance of the crime rather than an element of the crime, the court “should nonetheless borrow from Taylor what that case called a ‘modified categorical approach’ ” and “examine only charging documents, jury instructions, and any special jury finding.” Nijhawan, 129 S.Ct. at 2302. The Court “d[id] not agree that fairness requires the evidentiary limitations [petitioner] proposes,” and reasoned that “Taylor, James [v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) ], and Shepard ... developed that list [of judicially noticeable documents] for a very different purpose, namely that of determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction.” Id. at 2303 (emphasis added). This sentence suggests that the purpose of the modified categorical approach is to determine under which portion of a divisible statute the defendant was convicted. See United States v. Woods, 576 F.3d 400, 406 *930 (7th Cir.2009) (“Nijhawan supports our understanding that the permissible additional materials may be consulted only for the purpose of determining under which part of a divisible statute the defendant was charged.”).
Judge Berzon is mistaken when she argues that “Nijhawan is crystal clear: The modified categorical approach is used to determine under which provision of a divisible statute a defendant was convicted.” Berzon Op. at 950. In fact, the Court declined to apply either the categorical or the modified categorical approach to the statute at issue in that case. It had no need to explicate how either method should be applied, and it is far from “crystal clear” that Nijhawan limited the modified categorical approach to divisible statutes. If anything, by ratifying the creation of a new “circumstance-specific” category of statutes, the Court expanded lower courts’ authority to look beyond statutory definitions in determining whether a particular recidivist statute applied to certain prior convictions.
Johnson contains similar language. In that case, the Court held that Florida’s divisible battery statute, which contained a subpart that permitted conviction by “[a]ctually and intentionally touching] ... another person,” FLA. STAT. § 784.03(l)(a)(l), did not “ha[ve] as an element the use ... of physical force against the person of another,” 18 U.S.C. § 924(e)(2)(B)®, and was thus not categorically a “violent felony” under the ACCA. Johnson, 130 S.Ct. at 1274.[7] The Court came to this conclusion by interpreting the term “physical force” in the ACCA to mean “violent force — that is, force capable of causing physical pain or injury to another person.” Id. at 1271.
“[T]he Government assert[ed] that [the Court’s] interpretation w[ould] make it more difficult to remove, pursuant to 8 U.S.C. § 1227(a)(2)(E), an alien convicted of a ‘crime of domestic violence’ ... based upon battery convictions that ... do not require the use of violent physical force.” Id. at 1273. The Court responded:
This exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the “modified categorical approach” that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the [judicially noticeable documents].
Id. (emphasis added) (quotation marks and citation omitted). This language, too, could be read to suggest that the purpose of the modified categorical approach is limited to determining under which portion of a divisible statute a defendant was convicted.
Judge Berzon argues that “Johnson dispels any remaining doubt” that the modified categorical approach is limited to divisible statutes. Berzon Op. at 951. Specifically, she argues that because the Court was trying to offer the modified categorical approach as a flexible option for the government, the Supreme Court had an incentive to state the rule as broadly as it could. In effect, because the Court did not explicitly authorize use of *931 the modified categorical approach in the case of non-divisible statutes, Judge Berzon encourages us to draw the strong negative inference that Johnson clearly foreclosed such uses. However, because the statute of conviction in Johnson was a divisible statute that offered two different definitions of battery (neither of which met the “physical force” requirement, see Johnson, 130 S.Ct. at 1269), the Court had no reason to articulate a rule for cases in which a statute was not divisible in the same way.
We acknowledge that language in Nijhawan and Johnson provides support for limiting the modified categorical approach to divisible statutes. However, this language lacks conclusive weight for several reasons. First, neither opinion states explicitly that the only purpose of the modified categorical approach is to narrow a divisible statute to the generic definition. See Woods, 576 F.3d at 415-416 (Easter-brook, C.J., dissenting) (pointing out that the Supreme Court “Justices themselves have not used the word [‘divisibility’] or its functional equivalent,” including in Nijhawan, where “[t]he Supreme Court affirmed ... without mentioning ‘divisibility ” despite a dissenting opinion in the court of appeals decision below that “invoked a ‘divisibility’ requirement in support of [its] argument”). But more importantly, in neither of these decisions was the Supreme Court considering the issue we are considering here: to what kinds of statutes the modified categorical approach can be applied. Thus, although Judge Berzon accurately observes that the arguments in those cases were thoroughly briefed and examined by the Court, Berzon Op. at 950-51, neither case presented the problem at issue here. In fact, the modified categorical approach was largely irrelevant to the issues the Supreme Court was ruling on — Nijhawan held that the Taylor framework did not apply at all to the issue of whether the alien was removable, see Nijhawan, 129 S.Ct. at 2302-03, and Johnson noted that its inquiry was limited to the categorical approach because “nothing in the record of [petitioner’s] 2003 battery conviction permitted the District Court to conclude that it rested upon anything more than the least of [the] acts [permitted under the state statute],” 130 S.Ct. at 1269. In sum, the Court’s discussions of the modified categorical approach are illustrative rather than prescriptive on the point at issue here.
3
Beyond Nijhawan and Johnson, the circuits are a bit of a jumble. Some circuits have adopted a divisible-statutes-only rule, although few have given full attention to the rule. Others have adopted ambiguous or even conflicting rules, with several reflecting the stop-and-start analysis that we have experienced. For example, the Seventh Circuit has strongly suggested that the modified categorical approach is limited to divisible statutes. In United States v. Woods, 576 F.3d 400 (7th Cir.2009), the court held that a state conviction for involuntary manslaughter was not a “crime of violence” under the Guidelines because it lacked the element of criminal intent. Id. at 410-13. The court declined to apply the modified categorical approach to supply that element, reasoning that Supreme Court precedent “permitís] a court to go beyond the statutory definition of the crime to consult judicial records ... only where the statute defining the crime is divisible, which is to say where the statute creates several crimes or a single crime with several modes of commission ... identified somehow in the statute.” Id. at 411. The court emphasized that the modified categorical approach should not be used “to look at the particular facts underlying the defendant’s conviction,” but only “ ‘to determine whether the jury actually convicted the defendant of (or, in the case of a guilty plea, the defendant expressly *932 admitted to) violating a portion of the statute that constitutes a violent felony.’ ” Id. at 404 (quoting United States v. Smith, 544 F.3d 781, 786 (7th Cir.2008)); see also id. at 405 (“In short, the additional materials permitted by Shepard may be used only to determine which crime within a statute the defendant committed, not how he committed that crime.”); id. at 409 (“[T]he only thing that counts for purposes of the ACCA or the career offender Guidelines is the prior crime for which the defendant was actually convicted.”).[8]
Whatever the apparent force of Woods, the Seventh Circuit has recently refined its course, and it is less clear that the court has converged on a divisible-statutes-only rule. In United States v. Fife, 624 F.3d 441 (7th Cir.2010), the court recently applied the modified categorical approach to determine whether a conviction under an Illinois armed violence statute constituted a violent felony under the ACCA’s residual clause. Id. at 444; see Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). The relevant statute of conviction provided that “[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law,” with the exception of a number of enumerated felonies such as murder and manslaughter. 720 ILL. COMP. STAT. 5/33A-2 (2007). Resisting application of the modified categorical approach to his case, Fife argued “that the statute must be considered as a whole without any subdivisions.” Fife, 624 F.3d at 446. According to Fife, this would mean that some convictions, such as driving under the influence with a firearm in the vehicle, or filing a false tax return while possessing a gun, would categorically not qualify under the ACCA’s residual clause as “purposeful, violent, and aggressive.” Id. at 445. The court acknowledged the “broad reach” of the Illinois statute, but held that the statute of conviction “is a divisible statute not because each subcategory is separately listed, but because by its terms it creates several crimes or a single crime with several modes of commission.” Id. at 444, 446. The court went on to observe that “the armed violence offense creates multiple modes of commission, defined by the felony committed while armed with a dangerous weapon,” and that the court was free to “examine underlying documents to determine the precise offense committed— specifically, to determine which felony Fife committed while possessing a weapon.” Id. at 446^47. Although the Seventh Circuit in Fife nominally retained the rule that the modified categorical approach only applied to divisible statutes, in our terminology it defined “divisible statute” in a manner that would encompass missing element statutes, including any statute that “necessarily establishes multiple modes of commission of the crime.” Id. at 446.
Four other circuits — the First,[9] Fourth,[10] Fifth,[11] and Eighth[12] — have lim *933 ited the modified categorical approach to the divisible statute situation, but without much explanation as to precisely why this limitation - is compelled by Taylor and Shepard. The Sixth[13] and Tenth[14] Cir *934 cuits appear to apply the modified categorical approach whenever the offense of conviction is categorically broader than the generic crime. And the Second,[15] Third,[16] *935 and Eleventh[17] circuits have been ambiguous about their approach.
4
Although we acknowledge that Aguila’s argument has support, we are not persuaded by it. In the end, we believe that this argument is inconsistent with the Supreme Court’s mandate in Taylor that we apply a modified categorical approach that considers to some degree the factual basis for the defendant’s conviction — as determined by looking at the limited universe of Shepard documents — in order to determine what the jury must have found.
Aguila’s argument interprets the concepts of “actually required” and “necessarily rested” in Taylor and Shepard to mean “actually required” and “necessarily rested” in a strictly elemental sense — that is, a prosecutor must be “actually required” to prove the generic elements in every case brought under the state statute so that a jury’s finding must have “necessarily rested” on that element in every trial brought under the provision. For example, if the generic crime requires use of a gun and the state crime requires no weapon at all, then the factfinder is not always required to find that the defendant used a gun. As a consequence, according to Aguila and Judge Berzon, the modified categorical approach can never demonstrate that the factfinder was “actually required,” as a formal matter, to find a non-elemental fact.
The problem with this framework is that if we follow its logic, the modified categorical approach should not apply to divisible statutes, leaving no room for a modified approach at all. Even in the divisible statute situation, the factfinder is never “actually required” by the statute alone to find the precise elements of the generic crime.[18] *936 To use our example above, suppose that the generic aggravated assault statute has the elements of (1) harmful contact and (2) the use of a gun, while a state statute of conviction has the elements of (1) harmful contact and (2) the use of a gun or an axe. Without examining additional documents and conducting some inquiry into the specific circumstances surrounding a conviction, it will never be possible to conclude that the conviction “necessarily rested” on the fact that the defendant used a gun. In theory, all the jury has to decide is whether the defendant used a gun or an axe, and the use of an axe in an assault is not covered by our hypothetical generic aggravated assault statute. The conclusion that the prior conviction involved the use of a gun can only be reached after looking at the relevant Shepard documents.
In other words, Aguila’s reading of “actually required” collapses the modified categorical approach into the categorical approach, because the only time that the factfinder in the state case is “actually required” to find a particular generic element in that way is when conviction under the state statute always satisfies the generic statutory definition regardless of the particular facts of the case, either because the state statute matches the generic crime or because the state statute criminalizes a narrower range of conduct than the generic crime. Thus, in order to preserve any role for the modified categorical approach, “actually required” cannot mean “actually required by specific words in the statute of conviction.”
Because applying the modified categorical approach permits some consideration of the particular acts the defendant committed, Taylor requires a modest, but more nuanced inquiry. The modified categorical approach simply asks, in the course of finding that the defendant violated the statute of conviction, was the factfinder actually required to find the facts satisfying the elements of the generic offense? In other words, the purpose of the modified categorical approach is to determine (1) what facts the state conviction necessarily rested on and (2) whether these facts satisfy the elements of the generic offense. See Shepard, 544 U.S. at 21, 125 S.Ct. 1254 (modified categorical approach indicates “whether the plea had necessarily rested on the fact identifying the burglary as generic” (emphasis added) (quotation marks omitted)).
For example, regarding our gun/axe divisible statute, as we understand Taylor, if the indictment alleges only that the defendant used a gun, and the only prosecutorial theory of the case (as ascertained exclusively through the relevant Shepard documents) is that the defendant used a gun, then we can be confident that if the jury convicted the defendant, the jury found that the defendant used a gun rather than an axe. In such an instance, we would say that, given the facts put forward by the government, the jury was “required” to find that the defendant used a gun. And in the plea context, if the only weapon the defendant admitted to using was a gun, then we can be confident *937 that the trier of fact was “required” to find that the defendant used a gun in the course of assaulting the victim. In other words, the modified categorical approach asks what facts the conviction “necessarily rested” on in light of the theory of the case as revealed in the relevant Shepard documents, and whether these facts satisfy the elements of the generic offense.
Under such an approach, we are confident of the facts that fill the gap between a divisible statute of conviction and the generic statute because we have limited our review of the record to “only a restricted look beyond the record of conviction under a nongeneric statute.” Shepard, 544 U.S. at 23, 125 S.Ct. 1254. We avoid “evidentiary disputes” by relying only on documents that give us the “certainty of a generic finding,” id. at 23 n. 4, 24, 125 S.Ct. 1254 (plurality opinion), including “the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.” Id. at 16, 125 S.Ct. 1254; see also Snellenberger, 548 F.3d at 701-02 (holding than this list is illustrative and adding a clerk’s minute order to the list). In other words, we think that Shepard adequately addresses the claim that Taylor permits only a narrowly limited inquiry into the facts. We may inquire into the facts necessary to a conviction only to the extent they are discernable from the limited set of documents approved in Shepard. But we need not ignore such facts when they are available in those documents.
Once we acknowledge that “actually required” means something like “actually required in light of the facts the defendant admitted” or “actually required in light of the facts referred to in jury instructions,” there is little logical difference between divisible statutes and missing-element statutes in terms of when the modified categorical approach may appropriately be applied. In both cases, courts must rely on the same set of documents reflecting the facts necessarily found by the trier of fact in support of the conviction; they cannot look to any different documents or facts when considering a conviction under a missing-element statute than they would when reviewing a conviction under a divisible element statute. If the defendant could not have been convicted of the offense of conviction unless the trier of fact found the facts that satisfy the elements of the generic crime, then the factfinder necessarily found the elements of the generic crime. Consider again our example of the situation in which the generic aggravated assault offense requires (1) harmful contact and (2) the use of a gun, whereas the statute of conviction requires only harmful contact. If the Shepard documents establish that the factfinder necessarily found that the defendant satisfied the “harmful contact” element by inflicting harmful contact with a gun, then the conviction “necessarily rested” on this fact. Take, for example, an indictment alleging that the defendant used a gun to inflict harmful contact on a victim from 200 feet away. Or, perhaps the defendant admitted in a guilty plea to shooting the victim. Either way, the factfinder was actually required to find the facts that satisfy the elements of generic aggravated assault, which is all that Taylor requires.
There is an important limitation on our analysis of the modified categorical approach. Although we have concluded that a missing-element statute can be examined under the modified categorical approach, a court must exercise caution in determining what facts a conviction “necessarily rested” on. It is not enough that an indictment merely allege a certain fact or that the defendant admit to a fact; the fact must be necessary to convicting that defendant.
*938 This limitation is important not just because of Taylor and Shepard but because of an important fairness concern raised by Judge Kozinski in his Li concurrence. In Li, he argued that applying the modified categorical approach to the missing element situation is “unfair to defendants because it denies them notice and a reasonable opportunity to rebut the charges against them.” 389 F.3d at 900 (Kozinski, J., concurring); see also Berzon Op. at 959-61. Where a particular fact is not an element of the statute of conviction, he argued, the defendant “ha[s] no reason to believe it w[ill] be relevant to his conviction, and thus no reason to cast doubt on the government’s evidence as to [that fact].” Li, 389 F.3d at 900 (Kozinski, J., concurring). Even if the defendant “ha[s] overwhelming evidence” contradicting the government’s assertion as to the non-elemental fact, “presenting it to the jury would [be] a waste of time and probably excluded as irrelevant,” since the non-elemental fact is “not an element of the offense for which he [i]s being tried.” Id.
Our circumscribed interpretation of the modified categorical approach addresses this concern. If indeed a fact was necessary to the defendant’s conviction, then the defendant certainly has the incentive to contest that fact, even if that fact is not separately listed as a statutory element of the crime. Let us return to our example in which the generic aggravated assault offense requires (1) harmful contact and (2) use of a gun, whereas the statute of conviction requires only harmful contact. Under our reading of the modified categorical approach, if the Shepard documents establish that the defendant satisfied the “harmful contact” element by inflicting harmful contact with a gun, then the factfinder was “actually required” to find that the defendant used a gun, and the conviction “necessarily rested” on this fact. In such a situation, the defendant has every incentive to demonstrate that he did not use a gun. If the defendant is successful in this showing, he will have successfully refuted the only theory that the government put forward regarding how he committed the harmful contact, and the jury will acquit him. On the other hand, if the jury convicts the defendant, then we may be confident that the jury determined that he used a gun, because such a determination was necessary given the government’s theory of guilt. Once again, the fact that we may only rely on a narrow and defined range of documents — the indictment, jury instructions, judicial findings, plea agreements, plea colloquies, and the like — ensures that the defendant will have understood and had an opportunity to contest all facts which are necessary to his conviction.
Although our holding today is an expansion of the modified categorical approach relative to Navarro-Lopez, our interpretation of the modified categorical approach contains important limitations to ensure that it remains a narrow exception to the categorical approach. See Taylor, 495 U.S. at 602,110 S.Ct. 2143 (“Th[e] categorical approach ... may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary.” (emphasis added)).
5
Our interpretation of the modified categorical approach finds strong support in the uniformity principle underlying Taylor. In finding that “ ‘burglary’ ... must have some uniform definition independent of the labels employed by the various States’ criminal codes,” the Taylor Court reasoned that Congress’s intent in enacting the ACCA was to “protect[] offenders from the unfairness of having enhancement depend upon the label employed by *939 the State of conviction.” 495 U.S. at 589, 592, 110 S.Ct. 2143; see also 28 U.S.C. § 991(b)(1)(B) (purpose of estabhshing the United States Sentencing Commission was to “avoid[] unwanted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct”). If the meaning of “burglary” “depend[ed] on the definition adopted by the State of conviction,” then “a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct ‘burglary.’ ” Taylor, 495 U.S. at 590-91, 110 S.Ct. 2143. The Court pointed to the statute at issue in Aguila’s case — California Penal Code § 459 — and found it unreasonable that “a person imprudent enough to shoplift or steal from an automobile in California would be found ... to have committed a burglary constituting a ‘violent felony’ for enhancement purposes — yet a person who did so in Michigan might not.” Id. at 591, 110 S.Ct. 2143.
Yet this California-Michigan dilemma is precisely the result produced by Navarro-Lopez’s “missing element” rule. Under that restrictive rule, if the offense of conviction lacks an element of the generic crime, a court may never look beyond the terms of the statute to determine the factual basis for a defendant’s conviction, even if the defendant specifically admits to facts that would satisfy the generic definition. This rule means that certain state crimes can never be used for enhancement or removability purposes. For example, because California Penal Code § 459 arguably lacks the element of unlawful or unprivileged entry, under Navarro-Lopez’s rule, a person who violates this statute will never be considered to have been convicted of generic burglary, regardless of what he did or what he admitted to.[19] See Aguila II, 553 F.3d at 1234 (“Even if we were to undertake a modified categorical approach, we could not narrow the California statute by amending it to include the restrictive elements of the Guidelines’ generic offense — namely, that the entry must have been ‘unlawful or unprivileged.’ ”). In other words, under Navarro-Lopez, burglary in California is, categorically, not generic burglary, and thus no one convicted of burglary in our nation’s most populous state is eligible for a sentence enhancement for having committed a “crime of violence.” And in our circuit, the problem is not unique to California. See AguilarTurcios, 582 F.3d at 1104-05 (Bybee, J., dissenting) (observing that three of the nine states in the Ninth Circuit — California, Idaho, and Nevada — lack the unlawful entry requirement and that burglary convictions in these states would not qualify for enhancement under Navarro-Lopez).
By contrast, a person who commits the exact same offense in a state whose burglary statute happens to require proof of unlawful entry — say, Michigan — is subject to a sentence enhancement. The Court’s concern in Taylor with one kind of formalism, in which every criminal act a state denominates as a “burglary” counts (even when it shouldn’t), was not meant to create *940 a different kind of formalism, in which no criminal act a state denominates as a “burglary” counts (even when it should).
Our concern is thus both practical and pervasive. The process of mapping a generic federal definition onto state crimes— defined variously by a combination of common law definitions, model penal codes, statutes, and judicial exposition — has exposed the diversity of legal thought among state legislatures and courts. See Woods, 576 F.3d at 413 (Easterbrook, C.J., dissenting) (“It may be easy to tell when a person’s conduct was violent and aggressive, but whether a crime of conviction entails such conduct can be tricky, because it is necessary to think through the many varieties of behavior within a law’s domain. States did not write their statutes with Begay in mind.”).[20] Our approach avoids the excesses of either kind of formalism. No system that requires us to map a generic statute to a state statute will yield perfectly uniform results, but the flexibility of the modified categorical approach enables sentencing judges to come closer to satisfying the ideal of equal treatment of state convictions.
# :f! ;|i ifi sfi *
In sum, Navarro-Lopez’s “missing element” rule is overruled, as are any subsequent cases to the extent that they relied on that rule and are inconsistent with the revised modified categorical approach discussed here. In any case requiring the application of Taylors categorical approach, in the event that we determine that the statute under which the defendant or alien was previously convicted is categorically broader than the generic offense, we may apply the modified categorical approach. Under the modified categorical approach, we determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense.
We turn now to Aguila’s particular case.
V
In 1988, Aguila was convicted of first-degree residential burglary under California Penal Code § 459, which punishes “[e]very person who enters [various structures] ... with intent to commit grand or petit larceny or any felony.” Following Aguila’s 2004 conviction for illegal reentry after deportation, in violation of 8 U.S.C. § 1326, the district court enhanced Aguila’s sentence under U.S.S.G. § 2L1.2(b)(l)(A), holding that his prior burglary conviction qualified as “burglary of a dwelling” and therefore a “crime of violence” under the Guidelines. U.S.S.G. § 2L1.2 cmt. n. l(B)(iii). Aguila argues that his 1988 conviction does not qualify as a “burglary of a dwelling” under either Taylor’s categorical or modified categorical approach because California Penal Code § 459 lacks the element of “unlawful or unprivileged entry.”[21] We address the *941 categorical and modified categorical approaches in turn.
A
We have consistently held that California Penal Code § 459 is categorically broader than generic burglary because it contains no requirement of “unlawful or unprivileged entry.” See, e.g., Rodriguez-Rodriguez, 393 F.3d at 857; Velasco-Medina, 305 F.3d at 851; O’Neal, 937 F.2d at 1373, abrogated on other grounds by statute as recognized by Garcia-Cruz, 40 F.3d at 988-89; see also Taylor, 495 U.S. at 599, 110 S.Ct. 2143 (holding that generic burglary “ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime” (emphasis added)).[22] However, none of our cases have grappled with an unusual aspect of California’s “burglary” definition and with an ambiguous aspect of the meaning of “unlawful or unprivileged entry” under Taylor. See Snellenberger, 548 F.3d at 704-08 (M. Smith, J., dissenting). Because these issues are crucial to our holding with respect to the modified categorical approach, we find it necessary to address them here.
On its face, California Penal Code § 459 does not require that the entry be “unlawful or unprivileged,” punishing a person who merely “enters” a structure “with intent to commit grand or petit larceny or any felony.” However, in a sense, California case law does in fact require “unlawful or unprivileged” entry. The seminal case on this issue is People v. Barry, 94 Cal. 481, 29 P. 1026 (1892), in which an appellant who had been convicted of burglarizing a grocery store
contended] that a grocery store, during business hours, is a public place, and the defendant, as one of the public, had a legal right to be there, or rather to enter there; that the proprietors were doing business with the general public; the public were invited to enter; that therefore the defendant entered under an invitation of the owners, and that, conse *942 quently, his entry was lawful, and there can be no burglary when there is a lawful entry.
Id. at 1026-27 (emphasis added). The California Supreme Court rejected the appellant’s proposition that his entry was lawful, stating: “To this reasoning, we can only say a party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled, to enter.” Id. at 1027. In other words, when a person enters a place that is generally open to the public with the intent to commit a felony, the place is essentially not “public” as to that person, and that person has entered unlawfully.
The court elaborated on this concept in People v. Gauze, 15 Cal.3d 709, 125 Cal. Rptr. 773, 542 P.2d 1365 (1975). While noting Barry’s holding “that trespassory entry was no longer a necessary element of burglary” under California law, the court stated that “Barry and its progeny should not be read ... to hold that a defendant’s right to enter the premises is irrelevant.” Id., 125 Cal.Rptr. 773, 542 P.2d at 1367. Rather, “[a] burglary remains an entry which invades a possessory right in a building.” Id., 125 Cal.Rptr. 773, 542 P.2d at 1367. Regarding the case at hand, the court held
that defendant cannot be guilty of burglarizing his own home. His entry into the apartment, even for a felonious purpose, invaded no possessory right of habitation; only the entry of an intruder could have done so. More importantly defendant had an absolute right to enter the apartment. This right, unlike that of the store thief in Barry, did not derive from an implied invitation to the public to enter for legal purposes. It was a personal right that could not be conditioned on the consent of defendant’s roommates. Id.
Finally, the court sharply limited Gauze’s holding in People v. Frye, 18 Cal.4th 894, 77 Cal.Rptr.2d 25, 959 P.2d 183 (1998), overruled on other grounds by People v. Doolin, 45 Cal.4th 390, 87 Cal.Rptr.3d 209, 198 P.3d 11 (2009). In Frye, the court upheld the conviction of a defendant who had committed burglary after entering a person’s cabin “at the personal invitation of’ a resident of the cabin. Id., 77 Cal. Rptr.2d 25, 959 P.2d at 212. The court rejected the defendant’s argument that he could not be convicted of burglary because his entry was lawful, finding this argument to be “based on the erroneous premise that a burglary has not occurred if a person enters a building with the owner’s express consent.” Id. The court held that “[a]ny person who enters a house or building with the intent to commit a felony or theft is guilty of burglary!,] ... even if he enters with the owner’s or occupant’s consent.” Id. The court construed Gauze to mean “that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter.” Id., 77 Cal. Rptr.2d 25, 959 P.2d at 213 (quotation marks omitted). The case at hand was distinguishable from Gauze, the court decided, because “[a]lthough the evidence show[ed] defendant was invited into the [owners’] cabin[,] ... there [wa]s no evidence from which to reasonably infer defendant had an unconditional possessory right to enter.” Id.
These cases demonstrate that it is not so much that California burglary law lacks the requirement of unlawful or unprivileged entry; it simply contains a nuanced definition of “unlawful or unprivileged” different from the common law definition. Importantly, Barry, Gauze, and Frye all require that a defendant form his felonious intent prior to entering the structure. The nuance comes in where a defendant enters the structure with some kind of (at *943 least nominal) permission. In these kinds of situations, California cases hold that whether the defendant may be convicted of burglary depends on whether the defendant has an “unconditional possessory right to enter.” Id. (quotation marks omitted). A person has an unconditional possessory right to enter his own home and therefore “cannot be guilty of burglarizing his own home.” Gauze, 125 Cal.Rptr. 773, 542 P.2d at 1367. However, a person does not have an unconditional possessory right to enter a grocery store or a friend’s residence, and thus may be convicted of burglary if he enters one of these structures with felonious intent even if he has entered with nominal permission. See Barry, 29 P. at 1026-27; Frye, 77 Cal. Rptr.2d 25, 959 P.2d at 212-13. In such a situation, California law considers the entry to be unlawful. In sum, California’s definition of “unlawful or unprivileged entry” is entry with felonious intent into a structure. Our task, under the categorical approach, is to compare this definition to Taylor’s generic definition of “unlawful or unprivileged,” in order to determine whether California law permits a conviction for burglary that would not satisfy the “unlawful or unprivileged” requirement of generic burglary. But Taylor did not explain precisely what it meant by “unlawful or unprivileged entry” — that is, whether it meant “unlawful or unprivileged” in the California sense of that term or in a narrower sense. It simply concluded “that Congress meant by ‘burglary’ the generic sense in which the term is now used in the criminal codes of most States,” and then defined “the generic, contemporary meaning of burglary [to] contain[ ] at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.” 495 U.S. at 598, 110 S.Ct. 2143.
Fortunately, the Court did provide us with some guidance as to the meaning of “unlawful or unprivileged entry.” In a footnote following its definition of generic burglary, the Court stated:
This usage approximates that adopted by the drafters of the Model Penal Code: A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.’
Id. at 598 n. 8, 110 S.Ct. 2143 (quoting Model Penal Code § 221.1 (1980) (“MPC”)) (emphasis added). Moreover, following its definition of burglary, the Court cited to a criminal law treatise, which states that modern burglary statutes “generally require that the entry be unprivileged,” and that “[a] more precise way of describing this situation is by excluding those entries of premises when they are open to the public or by a person licensed or privileged to enter.” Wayne R. LaFave AND Austin W. Scott, Jr., Substantive Criminal Law § 8.13(a) (1986) (emphasis added); see Taylor, 495 U.S. at 598,110 S.Ct. 2143.
Based on the use of the disjunctive “or” in both the Model Penal Code and the LaFave and Scott definitions, it appears that the Court meant its “unlawful or unprivileged” requirement to preclude conviction for burglary in two situations: (1) where the premises are open to the public; and (2) where the person is licensed or privileged to enter. The MPC elaborates on these excluded situations as where
a servant enters his employer’s house as he normally is privileged to do, intending on the occasion to steal some silver; a shoplifter enters a department store during business hours to steal from the counters; a litigant enters the courthouse with intent to commit perjury; [and where] a fireman called on to put *944 out a fire resolves, as he breaks down the door of the burning house, to misappropriate some of the householder’s belongings.
MPC § 221.1 cmt. at 69; see also LaFave AND Scott, supra, § 8.13(a) (describing the MPC’s definition as “a sound approach”).
California law permits burglary convictions both where the premises are open to the public and where the person is licensed or privileged to enter under the above definitions. Regarding the former situation, California permits a burglary conviction where the person enters a place open to the public so long as the person enters with the intent to commit a felony and does not have an unconditional possessory right to enter. In contrast, based on the authorities Taylor cites for its generic definition, it appears that an entry is never “unlawful or unprivileged” if “the premises are at the time open to the public.” MPC § 221.1. California law also permits burglary convictions where a person is licensed or privileged to enter the structure. California law precludes conviction where the alleged burglar has an unconditional possessory right to enter the structure, but the MPC’s definition of “licensed or privileged” precludes conviction in the additional situations of “a servant [who] enters his employer’s house as he normally is privileged to do, intending on occasion to steal some silver,” and “a shoplifter [who] enters a department store during business hours to steal from the counters.” MPC § 221.1(a) cmt. at 69. In contrast, California law would permit convictions in these situations — both the servant and the shoplifter could be convicted because they would not have an unconditional possessory right to enter the structures involved and because they entered with felonious intent. See Barry, 29 P. at 1026-27.
Taylor provides further support for the conclusion that California law permits convictions for burglary that lack the generic requirement of “unlawful or unprivileged entry.” Before setting out its definition of generic burglary, the Taylor Court found it “implausible that Congress intended the meaning of ‘burglary’ ... to depend on the definition adopted by the State of conviction,” as this “would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct ‘burglary.’ ” 495 U.S. at 590-91, 110 S.Ct. 2143. The Court went on: “For example, Michigan ... classifies burglaries into several grades of ‘breaking and entering.’ In contrast, California defines ‘burglary’ so broadly as to include shoplifting.” Id. at 591, 110 S.Ct. 2143 (emphasis added) (citation omitted). The fact that the Court considered the inclusion of shoplifting to indicate the breadth of California’s burglary definition relative to other states’ definitions strongly indicates that the Court did not consider shoplifting to involve an “unlawful or unprivileged entry.”
In sum, burglary under California Penal Code § 459 is categorically broader than generic burglary because California’s definition of “unlawful or unprivileged entry,” unlike the generic definition, permits a conviction for burglary of a structure open to the public and of a structure that the defendant is licensed or privileged to enter if the defendant enters the structure with the intent to commit a felony.[23] We turn now to the modified categorical approach.
*945 B
Our inquiry under the modified categorical approach is whether the record demonstrates that Aguila’s conviction necessarily rested on facts that satisfy the elements of “burglary of a dwelling.” Our analysis as to the manner in which California burglary is categorically broader than generic burglary makes clear that the modified categorical approach is of no help to the government in Aguila’s case.
The government submitted three documents. First, the government submitted the California court’s Certificate and Order of Magistrate, which certified that Aguila and counsel
appeared before [the judge] in open court; that [the judge] read the said complaint to said defendant; and that [the judge] then asked the said defendant whether he pleaded guilty to the offense(s) charged in said complaint.... [T]he said defendant pleaded guilty to the following offense(s) charged in said complaint, to wit: Burglary, in violation of section 459, Penal Code, a Felony.
(Emphasis added.) In turn, Count 1 of the Felony Complaint to which Aguila pled guilty alleges that:
On or about January 4, 1988, in the County of Los Angeles, the crime of RESIDENTIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by GUILLERMO AGUILA, who did willfully and unlawfully enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Jacinto Padilla, with the intent to commit larceny and any felony.
(Emphasis added.) Finally, the government submitted the certified Abstract of Judgment, which confirms that Aguila was in fact convicted of the first-degree residential burglary offense alleged in Count 1 of the Felony Complaint.
When a defendant pleads guilty to a count, he admits the factual allegations stated in that count. Rodriguez-Rodriguez, 393 F.3d at 857; Velasco-Medina, 305 F.3d at 852. The government argues that Aguila’s plea of guilty to the offense charged in Count 1 of the Felony Complaint reveals that he “unlawfully entered]” the structure, and therefore that his entry was “unlawful or unprivileged.” Under our cases applying the modified categorical approach to California Penal Code § 459, the government is certainly on solid ground. We have consistently held that the presence of the word “unlawfully” in an indictment to which the defendant pled guilty (as shown by the judgment of conviction) supplies the “unlawful or unprivileged” requirement of the generic burglary definition. In Rodriguez-Rodriguez, for example, the defendant “pled guilty to ‘willfully and unlawfully entering] a building with the intent to commit theft.’ ” 393 F.3d at 857 (alteration in original). We relied on this indictment to hold that, “[b]ecause [defendant’s] conviction included the unlawful entry requirement absent in California’s statutory definition of burglary, his conviction meets the definition of ‘burglary of a dwelling’ under Taylor and is, therefore, a ‘crime of violence’ under the Sentencing Guidelines.” Id. at 857-858; Smith, 390 F.3d at 664-66; Velasco-Medina, 305 F.3d at 852; Williams, 47 F.3d at 995; Alvarez, 972 F.2d at 1005-06; Dunn, 946 F.2d at 620; O’Neal, 937 F.2d at 1373.
However, these cases did not delve deeply into California’s case law construing California Penal Code § 459. Our reading of this case law leads us to conclude that Rodriguez-Rodriguez and the cases using similar reasoning incorrectly applied the modified categorical approach because, quite simply, the word “unlawfully” in Aguila’s indictment tells us nothing *946 about whether his entry was “unlawful or unprivileged” in the generic sense.
As discussed above, although California Penal Code § 459 does not use the words “unlawful or unprivileged” to modify the word “entry,” the California Supreme Court has indeed established a form of an “unlawful or unprivileged entry” requirement — it has required that the defendant’s felonious intent be formed prior to the entry, and has permitted a burglary conviction only where the defendant did not have an unconditional possessory right to enter the structure. See, e.g., Gauze, 125 Cal.Rptr. 773, 542 P.2d at 1367. We have determined today that the main difference between California’s requirement of unlawful entry and the generic definition’s requirement is that the generic definition excludes entry into a structure open to the public and entry into a structure that the defendant is licensed or privileged to enter, while the California definition permits conviction in these situations where the defendant entered with the intent to commit a crime and did not have an unconditional possessory right to enter (such as with shoplifting).
The words “unlawfully enter” in Aguila’s indictment provide us with no indication as to whether Aguila was licensed or privileged to enter Jacinto Padilla’s home or whether Padilla’s home was open to the public because, under California law, such entries would be unlawful even if Aguila entered the home with Padilla’s permission. We therefore disagree with Judge Rawlinson’s contention that “[b]y pleading guilty to unlawfully entering a dwelling occupied by someone else, Aguila-Montes necessarily admitted that there was no licensed or privileged entry premised on a possessory interest or on the occupant’s informed consent.” Rawlinson Op. at 981. To the contrary, because of California’s unusual approach to defining unlawful or unprivileged entry, the Shepard documents do not permit such an inference. Examining only those documents, we could not rule out the possibilities that Aguila was attending a dinner party at Padilla’s invitation; that Padilla was hosting an open house which Aguila took advantage of; that Padilla had asked Aguila to house-sit while he was away for vacation; or that Aguila had a key to Padilla’s house, and that Padilla had told him he was free to enter at any time unless he was planning to rob the house.
In short, conviction records for California burglary cannot demonstrate that a defendant was convicted of generic burglary unless they do something more than simply repeat the elements of California burglary. Here, for example, if the Felony Complaint to which Aguila pled guilty stated that Aguila “did willfully and unlawfully enter a private inhabited dwelling house without the owner’s consent,” the document would have been sufficient to support a finding that Aguila had committed generic burglary. They did not. The documents only reveal that Aguila pled guilty to the bare elements of California burglary. Accordingly, under the modified categorical approach, the documents produced by the government do not demonstrate that Aguila’s conviction necessarily rested on facts satisfying the elements of the generic crime of “burglary of a dwelling.”
VI
Navarro-Lopez’s two-paragraph analysis with respect to the modified categorical approach, including its “missing element” rule, see 503 F.3d at 1073, is overruled. However, Aguila’s conviction for first-degree residential burglary under California Penal Code § 459 does not qualify as a “crime of violence” under either the categorical or modified categorical approach. Accordingly, we vacate the district court’s *947 sentence and remand to the original three-judge panel for consideration of the remaining issues Aguila raised on appeal.
VACATED AND REMANDED.

. Aguila raised several other issues before the Aguila I panel, which were resolved against Aguila in a separate, unpublished memorandum disposition. See United States v. Aguila-Montes de Oca, 275 Fed.Appx. 707 (9th Cir. 2008). Because the government’s Petition for Rehearing and Suggestion for Rehearing En Banc, as well as Aguila’s response to that petition, discussed only the issue of the sentence enhancement, we address only that issue and leave the other issues to the original three-judge panel to be resolved following our decision here.

. Judge Gould dissented, arguing that "the application of Navarro-Lopez ... to the California burglary statute here is inconsistent with the scope intended by the United States Supreme Court for its doctrine of modified categorical analysis, as outlined in Taylor." Id. (Gould, J., dissenting).

. See, e.g., United States v. Nobriga, 474 F.3d 561, 564 (9th Cir.2006) (per curiam) (applying the modified categorical approach to determine whether a conviction involved an intentional use of force because the statute of conviction did not require it); Galeana-Mendoza v. Gonzales, 465 F.3d 1054, 1060-62 (9th Cir.2006) (applying the modified categorical approach to determine whether an alien committed a “crime involving moral turpitude,” even though the California battery statute lacked the necessary injury element); Valencia v. Gonzales, 439 F.3d 1046, 1051-55 (9th Cir.2006) (using the modified categorical approach to determine whether statutory rape was a crime of violence, even though statutory rape under California law did not require a showing of non-consent); Rodriguez-Rodriguez, 393 F.3d at 857-58 (holding that a conviction for first-degree residential burglary under California Penal Code § 459 was a crime of violence even though § 459 does not require a showing of unlawful entry); United States v. Smith, 390 F.3d 661, 664-65 (9th Cir.2004) (same); United States v. Velasco-Medina, 305 F.3d 839, 851-52 (9th Cir.2002) (same); United States v. Franklin, 235 F.3d 1165, 1169-72 (9th Cir.2000) (same); United States v. Williams, 47 F.3d 993, 994-95 (9th Cir. 1995) (same); United States v. Alvarez, 972 F.2d 1000, 1005-06 (9th Cir. 1992) (per curiam) (same); United States v. Dunn, 946 F.2d 615, 620 (9th Cir.1991) (same); United States v. Sweeten, 933 F.2d 765, 769-70 (9th Cir.1991) (applying the modified categorical approach to a Texas burglary statute that did not require the use or threatened use of physical force as required for a "crime of violence”), overruled on other grounds by United States v. Grisel, 488 F.3d 844, 851 n. 5 (9th Cir.2007); United States v. O’Neal, 937 F.2d 1369, 1372-74 (9th Cir.1990) (applying the *923 modified categorical approach to California Penal Code § 459), abrogated on other grounds as recognized by United States v. Garcia-Cruz, 40 F.3d 986, 988-89 (9th Cir.1994).

. For example, at least one panel failed to recognize the change wrought by Navarro-Lopez and ignored it. See Salazar-Luviano v. Mukasey, 551 F.3d 857, 862-63 (9th Cir.2008) (applying the modified categorical approach even though the crime of conviction, 18 U.S.C. § 751, did not contain two elements of an obstruction of justice charge). Other panels caught the error and made a mid-course correction. See, e.g., Aguila II, 553 F.3d at *924 1233-34; Kawashima v. Gonzales, 503 F.3d 997, 1001-03 (9th Cir.2007) (decided one day before Navairo-Lopez, using modified categorical approach to determine whether convictions under 26 U.S.C. § 7206(1) and § 7206(2) qualify as aggravated felonies because the loss to the government exceeded $10,000), withdrawn and superseded by Kawashima v. Mukasey, 530 F.3d 1111, 1115-16 (9th Cir.2008) (holding that the modified categorical approach does not apply because “[t]he Navairo-Lopez rule, which requires that the statute of conviction must contain every element of the generic offense before we resort to the modified categorical approach, plainly applies in this setting”), abrogated by Nijhawan v. Holder, -U.S. -, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009), withdrawn and superseded by Kawashima v. Holder, 615 F.3d 1043 (9th Cir.2010). At least one district court has simply decided to ignore Navarro-Lopez altogether in applying the modified categorical approach. United States v. Ramos-Medina, No. 08cr3418 JM, 2009 WL 399249, *4 (S.D.Cal. Feb. 18, 2009) (refusing to "find that Navarro-Lopez overruled earlier precedents directly addressing first degree residential burglary under [California Penal Code] § 459” because "[t]here is simply no indication that the en banc decision of NavanoLopez sought to overrule [prior precedent]”).

. We note that other circuits have used the term "divisible statute” in potentially different ways. See Lanferman v. Bd. of Immigration Appeals, 576 F.3d 84, 90 (2d Cir.2009) (listing "three approaches” that the Second Circuit "might adopt” to determining when a statute was divisible and noting that “the exact parameters of the divisibility inquiry have not been determined”); see also Oouch v. U.S. Dep't of Homeland Sec., 633 F.3d 119, 122 (2d Cir.2011) (“We have not yet fixed on an approach for determining when a statute is ... divisible.”).

. Two of these scenarios were identified in Judge Kozinski’s concurring opinion in Li, which was cited favorably in Navano-Lopez, see 503 F.3d at 1073, and we add a third scenario that we believe is appropriate.

. This statute was divisible because it permitted conviction either by "[a]ctually and intentionally touch[ing] ... another person” or by "[intentionally causing] bodily harm to another person.” Fla. Stat. § 784.03(l)(a). The second of these subparts clearly involved "the use ... of physical force against the person of another,” 18 U.S.C. § 924(e)(2)(B)(i), and thus satisfied the ACCA’s definition of "violent felony.” The first of these subparts did not. See Johnson, 130 S.Ct. at 1274.

. Chief Judge Easterbrook, joined by Judges Posner and Tinder, dissented from the denial of rehearing en banc, arguing "that the sentencing judge should be allowed to look at the charging papers and plea colloquy in the criminal prosecution whether or not the statute is 'divisible.' ” Woods, 576 F.3d at 414 (Easterbrook, C.J., dissenting). While acknowledging that “Taylor holds that federal recidivist statutes use a charge-offense rather than a real-offense approach,” he found the panel’s " ‘divisibility’ principle ... incompatible with the Supreme Court’s understanding.” Id. at 414-15. Chief Judge Easterbrook concluded that, "instead of asking whether a state law is 'divisible,' we should ask whether the jury (or judge) necessarily found all the elements required to classify the crime as 'violent' for federal purposes.” Id. at 415.

. See United States v. Giggey, 551 F.3d 27, 40 (1st Cir.2008) ("Under the categorical approach, a federal sentencing court may not create a series of federal subcategorizations to fit the facts of a particular case.... If the state statute does not contain such ... distinc *933 tion[s], the federal court may not create one.”).

. See United States v. Rivers, 595 F.3d 558, 562-63 (4th Cir.2010) (declining to apply the modified categorical approach to determine whether a state conviction for failure to stop for a blue light contained the element of criminal intent so as to render it a "violent felony” under the ACCA).

. See, e.g., United States v. Lipscomb, 619 F.3d 474, 491-492 (5th Cir.2010) (limiting the modified categorical approach to cases involving "a statutory provision that covers several different generic crimes”); United States v. Gonzalez-Terrazas, 529 F.3d 293, 297-98 (5th Cir.2008) (holding that the modified categorical approach is used "only to determine of which subsection of a statute a defendant was convicted” where "the statute of conviction contains a series of disjunctive elements” (quotation marks omitted)).

. See United States v. Boaz, 558 F.3d 800, 807-08 (8th Cir.2009) ("Neither we nor the Supreme Court have approved a methodology that would decouple the limited review of record materials from an element-by-element analysis of the predicate offense. In other words, [the modified categorical approach may be used] only to determine which part of the statute the defendant violated.” (quotation marks and citations omitted)).

. See United States v. Armstead, 467 F.3d 943, 947-48 (6th Cir.2006) (stating that the court applies the modified categorical approach "[i]f the statutory definition embraces both violent and non-violent crimes or is otherwise ambiguous," and applying the modified categorical approach where a Tennessee child abuse statute "d[id] not necessarily require the use, attempted use, or threatened use of physical force, and, moreover, provide[d] an insufficient basis upon which to determine whether a prior conviction ... involve[d] conduct that presents a serious potential risk of physical injury to another" (emphasis added) (quotation marks omitted) (alteration in original))
Judge Berzon cites United States v. Young, 580 F.3d 373 (6th Cir.2009), and United States v. Bartee, 529 F.3d 357 (6th Cir.2008), for the proposition that the Sixth Circuit is a divisible statute-only jurisdiction. Berzon Op. at 954 & n. 6. We do not think those cases go so far. Young criticized a prior case, United States v. Foreman, 436 F.3d 638 (6th Cir.2006) for "remand[ing] for examination of Shepard documents.” 580 F.3d at 380 n. 8. But as a concurring judge notes, the remand was inappropriate in that case because none of the divisible offenses were crimes of violence. Id. at 385 (Sutton, J., concurring in part, dissenting in part, and concurring in the judgment) ("[I]n this setting, a remand suggests that we are asking the district court to do something that Taylor prohibits; engaging in a fact specific inquiry about how this defendant committed this offense."). Bartee is also not helpful in ascertaining the current state of play in the Sixth Circuit. In that case "the government acknowledged at sentencing that neither the statuory definition nor the amended information specified that the sexual contact was with a minor." 529 F.3d at 361. The only proof that the victim was a minor came from "[non-~]Shepard eligible records.” Id.

. See United States v. Townley, 472 F.3d 1267, 1277 (10th Cir.2007) (noting that Shepard "was concerned ... with what documents can be used to prove the facts underlying a conviction where the elements of the state crime do not precisely mirror the federal definition” (quotation marks omitted)); Vargas v. Dep't of Homeland Sec., 451 F.3d 1105, 1108— 09 (10th Cir.2006) (using the modified categorical approach to determine that a conviction for the state crime of “contributing to the delinquency of a minor,” which could encompass urging the minor to commit "anything from jaywalking to murder,” was sexual abuse of a minor, and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(A), because it was based on a charge that the alien induced, aided, and encouraged a child to engage in non-consensual sexual conduct).
Judge Berzon argues that the Tenth Circuit adopted a divisible-statute-only rule in United States v. Charles, 576 F.3d 1060, 1067 (10th Cir.2009), and United States v. Zuniga-Soto, 527 F.3d 1110, 1121 (10th Cir.2008). Berzon Op. at 953 & n. 5. Charles addressed the question of whether a prior conviction for escaping from lawful custody constituted a “crime of violence” under the Sentencing Guidelines in light of the Supreme Court’s decision in Chambers v. United States, 555 *934 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). The court acknowledged that the modified categorical approach "does not involve a subjective inquiry into the facts of the case,” id. at 1067, but it did not comment on whether it could be applied to nondivisible statutes. In fact, the statute at issue, 18 U.S.C. § 751(a), is arguably a non-divisible statute — the court cited language describing it as "overinclusive” — yet rather than specifying that the modified categorical approach did not apply, the court remanded the case back to the district court "to determine whether or not this conviction was a career-offender-qualifying escape from custody.” Id. at 1069 (internal quotation marks and citations omitted).
Judge Berzon also mischaracterizes Zuniga-Soto. It is true that the Tenth Circuit in that case corrected an intra-circuit split that resulted in cases that were "not always focused on the elements of the prior conviction.” 527 F.3d at 1121. However, the court in Zuniga-Soto was determining the applicability of the Sentencing Guidelines' residual clause, which defines a "[cjrime of violence” to include "any other offense ... that has as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 2L1.2 cmt. l(B)(iii) (emphasis added); see Zuniga-Soto, 527 F.3d at 1118. In fact, the court was careful to note that "[wjhile Comment l(B)(iii)'s ‘as an element' language does not allow for judicial analysis of the facts underlying a defendant's conviction, other enhancement provisions do.” Id. at 1120 n. 2 (emphasis added). In other words, Zuniga-Soto’s divisible-statute-only rule applies only to statutes that explicitly require exclusive reliance on statutory phrases. The court, in fact, reaffirmed its prior conclusion (one that is notably broader than the one we reach today) that "when the language of the enhancement provision requires courts to look at the specific facts underlying the prior offense, courts employ a factual approach, looking not only at the terms of the statute of conviction, but also at the underlying facts.” Id. (quoting United States v. Martinez-Hernandez, 422 F.3d 1084, 1087 (10th Cir.2005)) (emphasis added) (alteration and quotation marks omitted).

. Although Judge Berzon’s claim that the Second Circuit, by its terms, appears to restrict application of the modified categorical approach to "divisible statutes,” Berzon Op. at 954-56, is correct, several cases have suggested that court uses the term "divisible statute” in a manner that might encompass missing element statutes. See, e.g., Lanferman v. Board of Immigration Appeals, 576 F.3d 84, 91-92 (2d Cir.2009) (suggesting that its case law might "permit divisibility in 'all statutes of conviction ... regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct’ ” (internal citation omitted)); Hoodho v. Holder, 558 F.3d 184, 189 n. 3 (2d Cir.2009) ("We note that it is an open question whether a statute is divisible and therefore susceptible to the modified categorical approach when it encompasses both removable and non-removable offenses, but does not describe the removable offenses only in distinct subsections or elements of a disjunctive list.”). Indeed, the court has recently noted that it "ha[s] not yet fixed on an approach for determining when a statute is ... divisible.” Oouch v. U.S. Dep't of Homeland Sec., 633 F.3d 119, 122 (2d Cir.2011).

. There is tension between two of the Third Circuit's cases. In Knapik v. Ashcroft, 384 F.3d 84 (3d Cir.2004), the court stated that the modified categorical approach may be applied beyond the divisible statute situation, including in the missing element situation. Id. at 92 n. 8 (3d Cir.2004) (noting "two situations in which the formal categorical approach properly may be abandoned”: (1) "when the terms of the statute on which removal is based invites inquiry into the facts of the underlying conviction,” including when “the relevant criminal statute did not include a ‘loss greater than $10,000' element ”; and (2) "when the underlying criminal statute is written in the disjunctive ... such that some, but not all, convictions under the statute place the alien within the removal category for immigration purposes” (emphasis added)). However, a later decision of the Third Circuit, Jean-Louis v. Attorney General of the United States, 582 F.3d 462 (3d Cir.2009), contains some language suggesting that the modified categorical approach cannot be applied to “missing element” statutes:
[W]e depart[ ] from a strict categorical analysis only where the statute of conviction feature[s] disjunctive variations, some of which were sufficient for conviction of the federal offense and others of which were *935 not. We depart farther from the formal categorical approach only where the language of a particular subsection [of a statute] ... invites inquiry into the underlying facts of the case. In such a case, we modified the approach, but our inquiry remained a limited one, focused on the crime of conviction: we reviewed only the record of conviction to ascertain the particular variation of the statute under which the defendant was convicted.
Id. at 471-72 (emphases added) (quotation marks and citation omitted) (alteration in original); see also id. at 474 (inquiry must be focused "on the crime of which the alien was convicted — not the specific acts that the alien may have committed ”). Adding to our confusion, Jean-Louis cites Knapik favorably. 582 F.3d at 465.

. The Eleventh Circuit has also adopted language favoring a divisible-statute-only rule without specifying whether the modified categorical approach is limited to divisible statutes. See, e.g., Obasohan v. U.S. Att’y Gen., 479 F.3d 785, 788 (11th Cir.2007) ("If the statutory language contains some offenses that would qualify as aggravated felonies, and others that would not, then the statute is 'divisible,' and the IJ must look to the record of conviction ... to determine the offense of which the respondent was convicted.” (internal quotation marks omitted)); United States v. Garcia, 606 F.3d 1317 (11th Cir.2010) ("[W]hen the law under which a defendant has been convicted contains different statutory phrases — some of which require the use of force and some of which do not — the judgment is ambiguous and we apply a ‘modified categorical approach.’ ”).

. Judge Berzon argues that the modified categorical approach can only be applied when the statute of conviction is divisible. But her confidence in the divisible-statute-only rule really turns on the reliability of the relevant Shepard documents. We are puzzled both by some misdirection in her analysis and by her failure to explain why this confidence is not equally applicable to other kinds of statutes. For example, Judge Berzon observes that prosecutors are required to specify under what statutory provision a defendant is being charged and must only pursue this theory "absent a formal amendment to the charging document,” Berzon Op. at 968; but elsewhere she states that "a charging document may, but may not, outline the prosecution’s theory,” id. at 961. Judge Berzon also notes that judges are required to craft jury instructions "in light of the charges and the proof at trial,” presumably suggesting that these in *936 structions will require a jury to find guilt only if the specific theory advanced by the charging document has been proven, Berzon Op. at 970-71; but elsewhere she states that "juries are generally free to disagree as to means by which the defendant committed a particular element,” id. at 958.
In any event, the same reasons that motivate Judge Berzon to express confidence in the modified categorical approach in divisible statute cases suggest that we should have similar confidence in applying it to broad and missing element cases, so long as we are relying on the documents approved in Shepard. It is unclear why, according to Judge Berzon, these conviction records are unreliable when the conviction rests on a missing element statute, yet are perfectly reliable in determining under which part of a divisible statute a defendant was convicted.

. Ironically, had California chosen to include the phrase "entry, whether in a lawful or unlawful manner" to its definition of burglary — a nearly meaningless change — then the statute would be divisible and the modified categorical approach would clearly be applicable. The fact that California chose not to include words that indicated the only two possible types of entry into a building is the only reason that Judge Berzon believes we should not apply the modified categorical approach. Such a principle makes a defendant subject to a sentence enhancement turn entirely on the location in which he committed the prior offense, the precise outcome that Taylor sought to avoid in establishing a uniform definition of burglary. See 495 U.S. at 590-91, 110 S.Ct. 2143.

. Contrary to Judge Berzon's suggestion, the states have no incentive "to amend their criminal codes to better match the generic definitions contained in the federal recidivist statutes.” Berzon Op. at 973. But this is not a problem of their creation. It is a problem created by our efforts to understand how Congress intended federal sentences to account for prior state convictions. Federal recidivism statutes may or may not be good policy, but we have an obligation to try to enforce this policy as even-handedly as possible.

. Aguila made two other arguments for why the California statute is categorically broader than generic burglary: (1) the California statute covers structures not covered by the generic definition of "building or structure,” see Grisel, 488 F.3d at 848; and (2) the state offense includes broader aiding and abetting liability than its generic counterpart, see Aguila I, 523 F.3d at 1075. Because we hold that *941 Aguila’s prior conviction fails to satisfy the generic element of "unlawful or unprivileged” entry under either the categorical or modified categorical approach, we need not address these arguments.

. Judge Rawlinson suggests that Taylor's generic definition of burglary actually lacks the element of unlawful or unprivileged entry altogether, arguing that "[(Inclusion of the words 'or remaining in' signifies that the Supreme Court did not interpret the generic federal crime of burglary as necessarily requiring that the initial entry be unlawful or unprivileged.” Rawlinson Op. at 979. Indeed, the Court in Taylor did describe the generic crime of burglary as involving "basic elements” of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.” 495 U.S. at 599, 110 S.Ct. 2143. But this language does not support Judge Rawlinson’s interpretation. We think the proper reading of this description would suggest that the words "unlawful or unprivileged" apply with equal force to the acts of “entry into” a building and "remaining in” a building. In other words, a person can commit burglary under this definition even if he enters a structure lawfully, subsequently loses his right to remain in that structure, and opts to remain in the structure while forming a felonious intent. This reading is supported by other language in the Taylor opinion. See 495 U.S. at 599, 110 S.Ct. 2143 (“A few States' burglary statutes ... define burglary more broadly, e.g., by eliminating the requirement that the entry be unlawful.” (emphasis added)); see also United States v. Schmidt, 623 F.3d 257, 262 (5th Cir.2010) ("[T]he generic definition of burglary always requires an element of unlawful or unprivileged entry or presence.”). Ignoring the words "unlawful or unprivileged,” as Judge Rawlinson would do in the context of a conviction for "remaining in” a building, renders the words "unlawful or unprivileged” utterly superfluous, since a conviction would qualify as a conviction for generic burglary any time it alleged that the defendant was merely present in a building or structure with felonious intent.

. It is worth noting that, under the language we used in Part IV, California Penal Code § 459 can be classified as containing a “broad” definition of "unlawful or unprivileged entry,” or missing the generic element of unlicensed or unprivileged entry altogether. For our purposes, this distinction is irrelevant.