IKUTA, Circuit Judge,
concurring in part and dissenting in part, with whom KLEINFELD, CLIFTON, and BEA, Circuit Judges, join:
In today’s splintered decision, a two-judge “majority”[1] holds that Congress in *993 tended strict and arbitrary evidentiary limitations to be read into the cancellation of removal statute, despite the fact that the statute clearly states an alien’s rights to introduce evidence and testimony. Correctly recognizing that the “majority’s” holding is absurd, five judges have voted to alleviate the inherent unfairness by redefining the statutory language to mean the exact opposite of what it actually says. Both approaches are wrong: both are contrary to the plain language of the statute, and both reach outcomes that are neither contemplated by Congress nor dictated by common sense. I therefore dissent from the en banc decision as a whole, and I write separately to demonstrate why this confusion could have been avoided if we had just followed what the statute says.
I
The question before the court is whether the BIA erred in holding that Joseph Young, a lawful permanent resident, was ineligible for cancellation of removal under 8 U.S.C. § 1229b(a). Young asserts that even if he is removable, the BIA and IJ erred in concluding that he did not meet his burden of proving eligibility for cancellation of removal because he had necessarily been convicted of an aggravated felony. Young notes that section 11352(a) of the California Health & Safety Code,[2] his crime of conviction, criminalizes mere solicitation or offer to sell a controlled substance, which is not an aggravated felony, see United States v. Rivera-Sanchez, 247 F.3d 905, 908-09 (9th Cir.2001) (en banc), as well as the sale of that substance, which is one. Because the relevant records do not establish that his conviction under section 11352(a) was for selling a controlled substance (cocaine), as opposed to offering to sell it, Young argues that the record is inconclusive on the crucial question whether he was convicted of an aggravated felony, and therefore he remains eligible for cancellation of removal.
A
Cancellation of removal is a form of relief that is granted and governed by the Immigration and Nationality Act (INA), and it is upon that statute that our analysis should focus. Under 8 U.S.C. § 1229b, the Attorney General may cancel removal of an alien who has been determined to be inadmissible or removable from the United States if the alien meets three statutory criteria. 8 U.S.C. § 1229b(a).[3] One of these criteria is that the alien not have been “convicted of any aggravated felony,” *994 id. § 1229b(a)(3), which is defined in § 1101(a)(4S)(B) as “including a drug trafficking crime (as defined in section 924(c) of Title 18).” A conviction for the sale of cocaine (which is listed as offense conduct in section 11352(a)), qualifies as an “aggravated felony” because such an offense meets the federal definition of “drug trafficking crime” in 18 U.S.C. § 924(c).[4]
The REAL ID Act of 2005 amended the INA to codify the procedures for reviewing an alien’s application for cancellation of removal, adding 8 U.S.C. § 1229a(c)(4).[5] See Pub.L. No. 109-13, § 101(d), 119 Stat. 304. These amendments impose on the alien the burden of proving eligibility for cancellation of removal, including proving that the alien was not convicted of a drug trafficking crime that constitutes an aggravated felony. See 8 U.S.C. § 1229a(c)(4)(A) (“An alien applying for relief or protection from removal has the burden of proof to establish that the alien — (i) satisfies the applicable eligibility requirements.”); see also 8 C.F.R. § 1240.8(d) (“If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.”).
The INA grants an alien in removal proceedings the right “to present evidence on the alien’s own behalf.” 8 U.S.C. § 1229a(b)(4)(B). The REAL ID Act amendments further delineated the type of evidence that an alien may or must produce in order to carry the alien’s burden of proving eligibility for cancellation of removal. See id. § 1229a(c)(4)(B). Section 1229a(c)(4)(B) allows and even requires the alien to introduce a wide range of “information” as well as documents to establish the nature of a prior conviction. Among other things, the statute requires the alien to “submit information or documentation ... as provided by the instructions for the
*995 application form” for cancellation of removal (EOIR-42B). Id. The EOIR-42B application requires the applicant to “fully and accurately answer all questions,” to provide responses “as detailed and complete as possible,” and to attach “any documents that demonstrate your eligibility for cancellation of removal,” including documents “which reflect” convictions. EOIR42B, available at http://www.justice.gov/ eoir/eoirforms/eoir42b.pdf. Further, the application requires the applicant to attest to whether the alien has ever been convicted of any “felony, misdemeanor, or breach of any public law or ordinance” and to give a “brief description of each offense, including the name and location of the offense, date of conviction, any penalty imposed, any sentence imposed, and the time actually served.” Id. By statute, the IJ is to consider all such information in determining the alien’s eligibility for cancellation of removal. See 8 U.S.C. § 1229a(c)(4)(B) (“In determining whether the applicant has met [the] burden, the immigration judge shall weigh the credible testimony along with other evidence of record.”). The statute also contemplates that the alien may testify at the immigration proceedings, and it allows the IJ to require the applicant to “provide evidence which corroborates otherwise credible testimony.” Id. Providing such corroborative evidence is excused only if “the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.” Id.
Accordingly, the plain language of the statute requires the alien to carry the burden of proving eligibility for cancellation of removal, which includes establishing that the alien had not been convicted of an aggravated felony. The statute, however, also gives the alien the correlative right to introduce a full range of evidence to carry this burden.
B
Under this cancellation of removal framework, Young had the burden to prove (among other things) that he had not been convicted of any aggravated felony. 8 U.S.C. § 1229a(c)(4); see also § 1229b(a)(3). Specifically, Young’s record of conviction establishes that he was convicted for violating California Health & Safety Code § 11352(a). At least some ways of committing that offense qualify as aggravated felonies. Under the framework set out in 8 U.S.C. § 1229a, in order to carry his burden of proving that his conviction was not for a generic federal drug trafficking offense, Young must establish by a preponderance of the evidence that his conviction was for offering to sell cocaine, rather than selling it.
This leads to our central inquiry here: how should a court determine whether an alien has carried the burden of proving that a state conviction does not constitute an aggravated felony for purposes of the INA?
The Supreme Court originally addressed the issue of how to compare state convictions to generic federal offenses in the context of criminal law. In Taylor v. United States, the Supreme Court considered the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which provides that a defendant is subject to a sentence enhancement if the defendant had three prior convictions for certain generic federal felonies. 495 U.S. 575, 578, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The Supreme Court developed an analytic tool, now commonly referred to as the Taylor categorical approach, for determining if a state conviction qualified as a listed federal felony for purposes of ACCA. Under the categorical approach, a court must first derive from various sources the elements of the generic federal offense. See id. at *996 598-99, 110 S.Ct. 2143. Next, the court must make a legal assessment as to whether the state statute of conviction is a categorical match to the generic federal offense. See id. at 599, 110 S.Ct. 2143. This means that the court first compares the state statute to the generic federal offense to determine if (1) the state has adopted the generic federal definition or (2) the state statute criminalizes less conduct than does the generic federal offense. If so, “the conviction necessarily implies that the defendant has been found guilty of all the elements of [the generic offense].” Id.
If, on the other hand, the state statute criminalizes more conduct than is included in the generic federal crime, a court may use a modified categorical approach in making its legal assessment of whether the defendant had necessarily been found guilty of all the elements of the generic offense. See United States v. Aguila-Montes de Oca, 655 F.3d 915, 920 (9th Cir.2011) (en banc). In other words, when a state statute explicitly or implicitly criminalizes several different ways to commit an offense, only some of which are included in the generic federal crime, a court may consider the particular acts the defendant committed in order to determine “which statutory phrase ... covered a prior conviction.” Nijhawan v. Holder, 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009); see also Aguila-Montes de Oca, 655 F.3d at 924-25, 937-38 (stating that if the record of conviction establishes that the fact-finder necessarily determined that the defendant satisfied an element of an offense through (for example) use of a particular weapon, “then the conviction ‘necessarily rested’ on this fact”). The court’s inquiry is limited to determining the crime for which the defendant was necessarily convicted, not whether the defendant’s underlying conduct could have been charged as a generic federal offense. See GarachuriRosendo v. Holder, — U.S. -, 130 S.Ct. 2577, 2586, 177 L.Ed.2d 68 (2010); see also Aguila-Montes de Oca, 655 F.3d at 928 (“[I]t does not matter what acts the defendant committed-, rather, the relevant question is what he was convicted of.”).
Although the Taylor categorical approach and the modified categorical approach arose in the criminal context, the Supreme Court has also used these approaches in removal proceedings under § 1227(a) (2) (A) (iii) to determine whether an alien’s prior conviction constitutes an “aggravated felony” as defined in § 1101(a)(43). In considering whether an alien’s conviction for tax fraud qualified as an aggravated felony for purposes of deportability under § 1227(a)(2)(A)(iii), for instance, the Court clarified that it was using a “categorical approach by looking to the statute defining the crime of conviction, rather than to the specific facts underlying the crime.” See Kawashima v. Holder, — U.S. -, 132 S.Ct. 1166, 1172, 182 L.Ed.2d 1 (2012); see generally Gonzales v. Duenas-Alvarez, 549 U.S. 183, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) (assuming without deciding that the approach set forth in Taylor applied to determining whether an alien had committed an aggravated felony for analyzing removability under § 1227(a)(2)(A)).
In light of this legal framework, the method for analyzing Young’s claim that he carried his burden of proving that his state conviction did not constitute an aggravated felony for purposes of the INA seems reasonably straightforward. Section 11352(a), the state statute of conviction in this case, criminalizes a list of offenses (such as selling, furnishing, administering, and giving away designated controlled substances) that constitute aggravated felonies for purposes of § 1227(a)(2)(B)(i), as well as a list of offenses (such as offering to sell, furnish, administer, and give away those con *997 trolled substances) that do not. Accordingly, because section 11352(a) criminalizes more conduct than is included in the generic federal crime, a conviction under this section is not categorically an aggravated felony. Nevertheless, if Young’s conviction necessarily rested on conduct (such as sale of cocaine) that would constitute an aggravated felony under § 1227(a)(2)(B)(i), he would still be ineligible for cancellation of removal.
At the immigration hearing, the government produced documents showing that Young’s plea of guilty was to an indictment that listed the offenses in the conjunctive, including offenses that would qualify as aggravated felonies as well as those that would not. The IJ told Young that “one of your elements that you have to prove to show that you’re eligible for cancellation of removal is that you do not have any aggravated felony convictions” and invited him to produce a state criminal court document showing that his felony was not an aggravated felony. As the hearing transcript shows, Young responded, “I pled guilty to one count of sale. I didn’t ple[a]d guilty to trafficking or possession.” Thus the IJ properly invited Young, as § 1229a(e)(4)(B) required, to introduce evidence to show that he had not been convicted of an aggravated felony. Young responded by testifying under oath that he had in fact pleaded guilty to sale of narcotics, which was an aggravated felony.
The BIA noted that Young had the burden to establish his eligibility for relief, and that he had submitted documents showing a request to the state criminal court for records that might arguably have had the potential to assist him in his claim, but the record did not show that he had received such records or sought to submit them in his proceedings before the IJ. The BIA recognized that Ninth Circuit law established the proposition that Young’s own sworn admission that he had committed an aggravated felony could not be considered. Barred from the sensible course of relying on Young’s sworn statements, the BIA followed the more dubious path of treating Young’s plea to a charge including both an aggravated and a non-aggravated felony as a plea to both. Because the evidentiary limitations imposed on the immigration court were erroneous, I would not reach Young’s argument that pleading guilty to Count 1, which listed the offense conduct of § 11352(a) in the conjunctive, did not constitute a guilty plea to every offense listed in the indictment.
Because “a judicial judgment cannot be made to do service for an administrative judgment,” SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943), we should remand to allow such additional development of the record as the BIA may find necessary, so that it may have the first opportunity to determine whether a preponderance of the evidence proves that Young has not been convicted of an aggravated felony. On remand, the BIA should not be required to disregard Young’s own testimony under oath that his conviction was for selling narcotics. The BIA ought to be able to decide in the first instance whether to credit Young’s admission that he had committed an aggravated felony, or conceivably such additional documents or testimony as he may produce to show that his admission was mistaken.
II
But the majority of my colleagues have rejected the simplicity and clarity of this approach for a single reason: they believe that an alien may not submit the full range of evidence allowed by § 1229a(c)(4)(B) when it comes to proving that a conviction was not an aggravated felony. In the ACCA context, the Supreme Court imposed strict evidentiary limitations, allow *998 ing courts conducting a modified categorical inquiry to consider only a “narrow and defined range of documents — the indictment, jury instructions, judicial findings, plea agreements, plea colloquies, and the like.” Aguila-Montes de Oca, 655 F.3d at 938.[6] Judges Graber and Fletcher believe that these evidentiary limitations apply here and trump the statutory language of the INA.
Although both Judges Graber and Fletcher would ignore the statute when it authorizes the IJ to consider a broad range of evidence (and instead impose the ACCA evidentiary limitations), they diverge as to the next step. Despite bypassing the statute on the evidentiary issue, Judge Graber would return to the statutory language when it requires placing the burden of proof on the alien. See § 1229a(c)(4)(A). This approach would require the alien to attempt to prove the nature of a prior conviction without recourse to the alien’s own testimony or other probative evidence. Judge Fletcher, on the other hand, would avoid the patent unfairness of Judge Graber’s approach by placing the burden of proof on the government, thus ignoring the statutory language on both points.
As explained below, both of these approaches are wrong. Rather than taking the convoluted approach the en banc majority takes today, we should answer the question before us merely by applying the plain language of the statute.
A
The en banc majority goes wrong in erroneously assuming that we must impose the ACCA evidentiary limitations in the immigration context. Neither Congress nor the Supreme Court has required us to do so. To the contrary, the Court derived the ACCA evidentiary limitations from its statutory interpretation of ACCA, which the Court read as allowing “only a restricted look beyond the record of conviction.” Shepard, 544 U.S. at 23, 125 S.Ct. 1254. In reaching this conclusion, the Court indicated that it would be implausible to interpret ACCA as requiring a court to engage in an adversarial process, involving witness testimony and review of prior trial transcripts, in order to determine conduct underlying a prior conviction. Taylor, 495 U.S. at 601-02, 110 S.Ct. 2143. Moreover, such mini-trials are potentially susceptible to a constitutional challenge as abridging the right to a jury trial. Id. at 601, 110 S.Ct. 2143. As a plurality of the Court later explained in more specific terms, “allowing a broader evidentiary enquiry” might permit the sentencing court to make “disputed finding[s] of fact,” thus possibly conflicting with the rule enunciated in Apprendi v. New Jersey that a jury must make a finding “of any disputed fact essential to increase the ceiling of a potential sentence.” Shepard, 544 U.S. at 24-25, 125 S.Ct. 1254 (plurality opinion) (citing Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).
The Court has been sensitive, however, to the different language and purpose of the INA as compared to ACCA, and thus it has not imposed the strict ACCA evidentiary limitations in every immigration context. See, e.g., Nijhawan, 557 U.S. at 41-42, 129 S.Ct. 2294. In Nijhawan, the *999 Court considered whether an alien’s convictions for conspiracy to commit mail fraud, wire fraud, bank fraud, and money laundering constituted aggravated felonies under the INA. See id. at 32, 129 S.Ct. 2294. The INA defines “aggravated felony” as including an offense that “involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.” 8 U.S.C. § 1101(a)(43)(M)(i). Although the alien had stipulated that the loss in his case exceeded $100 million and the restitution order was for $683 million, the statute of conviction itself was silent as to loss. See Nijhawan, 557 U.S. at 32, 129 S.Ct. 2294.
Rather than mechanically applying the modified categorical approach exactly as it was developed in the criminal context, the Court considered both the language of the INA and the context of the proceedings at issue. After carefully construing the INA’s “aggravated felony” statute, 8 U.S.C. § 1101(a)(43), as well as the specific language of § 1101(a)(43)(M)(i), the Court determined that the INA differed from ACCA’s provisions in material ways. See Nijhawan, 557 U.S. at 36-40, 129 S.Ct. 2294. In light of these differences, the Court concluded that “Congress did not intend subparagraph (M)(i)’s monetary threshold to be applied categorically, i.e., to only those fraud and deceit crimes generically defined to include that threshold,” but instead intended the monetary threshold to apply “to the specific circumstances surrounding an offender’s commission of a fraud and deceit crime on a specific occasion.” Id. at 40, 129 S.Ct. 2294.
After deciding that the statutory language required the immigration court to evaluate the specific circumstances of an offense, the Court rejected the alien’s argument that “reasons of fairness” should limit the court’s consideration to the Shepard documents alone. Id. at 41-43, 129 S.Ct. 2294. According to the alien, “any broader examination of the prior proceedings” by the IJ would “unfairly permit [the alien] to be deported on the basis of circumstances that were not before judicially determined to have been present and which he may not have had an opportunity, prior to conviction, to dispute.” Id. at 41, 129 S.Ct. 2294. But the Court concluded that while “the statute foresees the use of fundamentally fair procedures, including procedures that give an alien a fair opportunity to dispute a Government claim that a prior conviction involved a fraud with the relevant loss to victims,” fairness did not require the ACCA evidentiary limitations that the alien proposed. Id. at 41, 129 S.Ct. 2294. Instead, it expressed reliance on immigration judges’ ability to “ascertain the nature of a prior conviction” without relitigating the conviction itself. Id. at 42, 129 S.Ct. 2294.
Nijhawan also called into question whether ACCA evidentiary limitations necessary in the criminal context (where courts must protect the defendant’s constitutional rights and the government must prove its case beyond a reasonable doubt) apply at all in the civil deportation context (which does not implicate these constitutional rights and in which the standard of proof is much lower). See id. at 41-42, 129 S.Ct. 2294. The Court noted that, unlike in the criminal context of Taylor, “a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim ‘beyond a reasonable doubt.’ ” Id. at 42, 129 S.Ct. 2294. Accordingly, after reviewing the statutory language and the particular context at issue, the Court allowed the immigration court to rely on the defendant’s sentencing stipulation and the trial court’s restitution order, non -Shepard documents that constituted clear and convincing evidence that *1000 the loss amount was more than $10,000. See id. at 42-43, 129 S.Ct. 2294.
Nijkawan’s analytic approach thus strongly suggests that we should reconsider the assumption that the ACCA evidentiary limitations are applicable in every context. Rather, when operating outside a criminal proceeding, a court must consider whether it is necessary to adapt the Taylor approach to fit the specific language of the statute at issue and the civil context of an immigration proceeding.
B
The considered analytic approach of Nijhawan is appropriate here. Although the Supreme Court has not yet addressed whether the ACCA evidentiary limitations are appropriate in the cancellation of removal context under § 1229b(a)(3), the specific statutory language of the cancellation of removal provisions, see 8 U.S.C. § 1229a(c)(4), as well as the civil context of immigration proceedings, weigh against applying the ACCA evidentiary limitations here.
We should begin our analysis with the statutory language. As described earlier, § 1229a(c)(4)(B) expressly delineates the type of evidence that an alien may or must produce in order to carry the alien’s burden of proving eligibility for cancellation of removal. Rather than limiting the alien to a narrow range of Shepard documents, this section allows and even requires the alien to introduce a wide range of documents to establish the nature of a prior conviction. In making this determination, § 1229a(c)(4) directs the IJ to consider a range of documents, the testimony of the alien and any witnesses, as well as ask for additional corroboration of this testimony as needed.[7] See supra at 994-95.
The cancellation of removal context further supports such a reading. The statutory scheme governing cancellation of removal differs from ACCA in at least one important respect: the alien has the burden of proving eligibility for this form of relief. See 8 U.S.C. § 1229a(c)(4)(A); see also 8 C.F.R. § 1240.8(d). Unlike the criminal context or the removability determination, in both of which the government bears the burden of proving affirmatively that the alien’s conviction does qualify for the enhancement at issue, Congress has placed the burden of proving eligibility for cancellation of removal squarely on the alien, who must prove that the conviction at issue is not an aggravated felony. Authorizing the alien to introduce and the IJ to consider a wide range of information, including testimony, gives the alien a reasonable opportunity to carry this burden. See 8 U.S.C. § 1229a(c)(4)(A), (B).
Accordingly, we should hold that the ACCA evidentiary limitations do not apply in the cancellation of removal context, and thus the alien is not limited to the Shepard documents in meeting the burden of showing that the alien has not been convicted of an aggravated felony. This means that Young should have the opportunity of introducing the evidence permitted under the INA to establish that his prior conviction was not a drug trafficking offense.[8] See supra at 996-98.
*1001 c
Young, as well as Judges Graber and Fletcher, offer a number of reasons for rejecting this approach and holding instead that the ACCA evidentiary limitations do apply in the cancellation of removal context. But these arguments do not withstand scrutiny.
First, Judge Graber asserts that despite the clear import of Nijhawan, its approach is not applicable here because § 1229a(c)(4) does not contain the language present in § 1101(a)(43)(M)(i), which indicated that Congress intended to apply a “ ‘circumstance-specific’ inquiry.” Graber op. at 983-84. Her opinion contends that Nijhawan relaxed the ACCA evidentiary limitations only in this very limited circumstance and only because neither.a categorical nor modified categorical analysis was appropriate. Graber op. at 983-84.
This effort to limit Nijhawan to the narrowest possible reading of its facts misses the key point: Nijhawan establishes that the ACCA evidentiary limitations do not apply when Congress indicates otherwise in the text of the governing statute. See 557 U.S. at 37-38, 129 S.Ct. 2294. Indeed, Judge Graber’s opinion seems to overlook the entire section of Nijhawan where the Court discussed and rejected the petitioner’s broader argument that, “for reasons of fairness,” the ACCA evidentiary limitations should be applied notwithstanding the statute. Id. at 41-43, 129 S.Ct. 2294.
Further, this cramped reading of Nijhawan overlooks the fact that the key policy reason suggested by the Supreme Court for imposing evidentiary limitations in the ACCA context, namely concerns regarding the risk of mini-trials to relitigate the criminal case, see, e.g., Taylor, 495 U.S. at 601, 110 S.Ct. 2143, do not arise in the civil setting of a cancellation of removal proceeding, where the alien need only prove by a preponderance of the evidence that the prior conviction was not an “aggravated felony,” see 8 C.F.R. § 1240.8(d). The IJ will not be adjudicating guilt or innocence, as guilt has already been determined in the prior criminal proceedings. Rather, the IJ, who is well-positioned to consider testimonial and documentary evidence, is required by statute to adjudicate only the nature of the conviction and is thus likely to come to a better conclusion by taking in more information and considering credibility and corroboration of testimony. See In re Silva-Trevino, 24 I. & N. Dec. 687, 702-03 (BIA 2008) (“Immigration judges are well versed in case management, and ... the answer to a single question ... may reveal a critical piece of information that is not in the record of conviction and that would ensure correct application of the [governing statute].”). Congress has demonstrated its confidence in the IJ’s competence to make such decisions by designating the IJ as the central arbiter in this statutory scheme and even insulating the exercise of that authority from judicial review. See 8 U.S.C. § 1252(a)(2)(B)(i) (“[N]o court shall have jurisdiction to review” the granting of discretionary relief, including cancellation of removal).
Moreover, all these arguments in favor of applying the ACCA evidentiary limitations in the cancellation of removal setting are undercut by the flaw highlighted in Judge Fletcher’s dissent: such evidentiary limitations, coupled with the statutory lan *1002 guage putting the burden of proof on the alien, reach an unfair result that Congress could not have intended.
We have previously addressed this inequity, as Judge Fletcher would have us do here, by retaining the ACCA evidentiary limitations and effectively eliminating the alien’s burden of proof. See Sandoval-Lua v. Gonzales, 499 F.3d 1121 (9th Cir. 2007). In Sandoval-Lua, which required us to apply pre-REAL ID Act law, we considered an alien’s claim that the BIA erred in denying his application for cancellation of removal because his state conviction did not constitute an aggravated felony. See id. at 1123, 1126-27. Applying the Taylor categorical approach, Sandoval-Lua agreed that the state crime of conviction was categorically broader than the applicable definition of an aggravated felony. See id. at 1128. Turning to the modified categorical approach, the court limited its analysis to the Shepard documents, which were inconclusive as to whether the alien had been convicted of a crime that qualified as an aggravated felony. See id. at 1129.
But the Sandoval-Lua court then recognized the potential unfairness inherent in making an alien prove the nature of prior state crimes while at the same time limiting the alien to the Shepard documents to try to meet that burden. To avoid this problem, Sandoval-Lua concluded that “an inconclusive record of conviction is sufficient to demonstrate an alien petitioner was not ‘necessarily’ convicted of the generic crime.” Id. at 1132.
But this holding effectively imposed the burden of proof on the government, which is contrary to § 1229a(c)(4)(A).[9] In order for a party to meet the preponderance of the evidence standard, the party must show that “the existence of a fact is more probable than its nonexistence.” Kennedy v. S. Cal. Edison Co., 268 F.3d 763, 770 (9th Cir.2001) (quoting Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)) (internal quotation marks omitted). Under Sandoval-Lua, though, the alien need not meet this burden: it is the government that must show it is more probable than not that the alien was convicted of an aggravated felony.[10] Moreover, Sandoval-Lua’s approach of shifting the burden by implication has the perverse effect of encouraging aliens to conceal relevant evidence. See Rosas-Castaneda v. Holder, 655 F.3d 875, 880, 884-85 (9th Cir.2011) (holding that an alien could satisfy the burden of proving eligibility for cancellation by refusing to provide documents that would prove ineligibility for relief).
Judge Fletcher claims that SandovalLua “plac[es] the burden of proof squarely on the applicant for cancellation of remov *1003 al.” Fletcher dissent at 992. This is true only if we redefine what it means to carry a burden of proof so that it means not carrying it. Indeed, Judge Fletcher effectively admits as much, arguing that the burden should be on the government because it is “in the better position to obtain the evidence,” Fletcher dissent at 991, and citing cases involving “[g]eneral burden-shifting principles,” United States v. Cortez-Rivera, 454 F.3d 1038, 1041 (9th Cir. 2006). But such practical considerations and general principles cannot trump the plain language of a statute that clearly directs otherwise.
Sandoval-Lua (and Judge Fletcher) go to great lengths to avoid the unfairness of saddling an alien with both the burden of proof and evidentiary limitations. See Fletcher dissent at 990-92. I agree that Congress could not have intended this result. But it is equally improper to ignore the plain language of the statute, which puts the burden of proof on the alien. The solution, of course, is to apply the statute as it is written, applying both § 1229a(c)(4)(B), which sets forth a broad range of permissible evidence, and § 1229a(c)(4)(A), which imposes the burden of proof on the alien.
Ill
In the end, the analysis should be simple. The plain language of § 1229a(c)(4)(B) requires the alien to carry the burden of proving eligibility for cancellation of removal, including proving that the alien had not previously been convicted of an aggravated felony. Although a court must use the Supreme Court’s categorical and modified categorical tool to determine if the prior conviction qualifies as an aggravated felony, this tool does not impose evidentiary limitations where the statute says otherwise, as it does here.
In arguing otherwise, Judge Fletcher’s dissent would adopt the approach first set forth in Sandoval-Lua, which imposes the evidentiary limitation set forth in Shepard, but shifts the burden of proof to the government. As made clear above, both of these interpretations are contrary to the statute.
But at least Judge Fletcher’s opinion has the virtue of being logical, even if it is inconsistent with the statutory language. It is Judge Graber’s opinion that reaches a result that could never have been intended by Congress. Contrary to the opinion, the result it reaches is “absurd.” Cf. Graber opinion at 989-90. Judge Graber’s approach would give the alien the statutory burden of proof, but ignore the statute’s evidentiary provisions and unfairly impose the strict evidentiary limitations of the ACCA enhancement analysis. Under this framework, an alien who has not been convicted of an aggravated felony is subject to the vagaries of state and local court recordkeeping systems and has only the hope that the relevant documents can be found (assuming they exist). If the limited documents allowed under Shepard do not resolve the question, the alien has no recourse. A fair reading of the applicable statutes establishes that Congress did not intend such an inequitable result. Cf. Nijhawan, 557 U.S. at 41, 129 S.Ct. 2294 (assuming that Congress intended the use of “fundamentally fair procedures, including procedures that give an alien a fair opportunity to dispute a Government claim that a prior conviction” constituted an aggravated felony).
The oddities of our division have now saddled us with a ruling with which nine judges disagree and which departs from the language of the statute in a way that most seriously disadvantages the alien. I do not join this result.

. It is useful to summarize how the voting has led us to this strange result. Seven judges (the two who join Judge Graber’s opinion and the five who join Judge Fletcher's opinion) agree that the evidentiary limitations articulated in Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), apply to aliens seeking to prove their eligibility for cancellation of removal. Six judges (the two who join Judge Graber’s opinion and the four who join my opinion) agree that an alien cannot meet the burden of showing such eligibility by a preponderance of the evidence by simply establishing that the alien’s record of conviction is inconclusive. Only two judges agree with both of these holdings, but the resulting pastiche forms the unconven *993 tional, and as I explain later, illogical, "majority."

. California Health & Safety Code § 11352(a) states, in pertinent part:
Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport [a designated controlled substance] shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years.

. With respect to eligibility for cancellation of removal, § 1229b(a) provides:
The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
(2) has resided in the United States continuously for 7 years after having been admitted in any status, and
(3) has not been convicted of any aggravated felony.
In addition, the alien must merit a favorable exercise of discretion. See 8 U.S.C. § 1229a(c)(4)(ii).

. Section 924(c)(2) defines a "drug trafficking crime” as including "any felony punishable under the Controlled Substances Act,” codified at 21 U.S.C. § 801 et seq., which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance,” 21 U.S.C. § 841(a), and imposes a maximum term of imprisonment of at least twenty years when the violation involves a Schedule II substance such as cocaine, see id. § 841(b)(1)(C). See also 18 U.S.C. § 3559(a) (classifying as felonies offenses in which the maximum term of imprisonment is more than one year).

. 8 U.S.C. § 1229a(c)(4) states, in pertinent part:
(4) Applications for relief from removal (A) In general
An alien applying for relief or protection from removal has the burden of proof to establish that the alien—
(i) satisfies the applicable eligibility requirements; and
(ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.
(B) Sustaining burden
The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant’s application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

. The Supreme Court first defined this range of documents in Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). We have further expanded the list of judicially cognizable documents in United States v. Snellenberger, 548 F.3d 699 (9th Cir. 2008) (en banc), and other decisions. The complete set of judicially cognizable documents is sometimes referred to as “Shepard documents.” See, e.g., Aguila-Montes de Oca, 655 F.3d at 935.

. The assertion in Judge Graber’s opinion that § 1229a(c)(4)(B) "merely allows the IJ to require corroborative evidence for testimony presented by the applicant,” Graber opinion at 984 (emphasis in original), is thus belied by the plain language of the statute itself.

. Judge Graber’s statement that such evidence "is largely irrelevant to the question that matters for the modified categorical approach,” Graber op. at 985, misunderstands the "question that matters”: whether Young had been convicted of an offense that constituted an aggravated felony. There is no reason why relevant non-Shepard evidence, such *1001 as Young’s sworn testimony regarding what he was convicted of, is ”[e]xtraneous” to answering this question. Graber op. at 984-85.

. Because Sandoval-Lua considered an application for cancellation of removal which was filed prior to the effective date of the REAL ID Act, the panel explicitly declined to consider the effect of § 1229a(c)(4). 499 F.3d at 1132 n. 10.

. Given the language added by the REAL ID Act, it is clear that Congress did not intend to relieve the alien of the burden of proof. Sandoval-Lua has been rejected by two circuits as contrary to the plain language of the cancellation of removal statute. See Salem v. Holder, 647 F.3d 111, 119 (4th Cir.2011) ("With respect for our colleagues on the ... Ninth Circuit[ ], we believe that ... Sandoval-Lua elide[s] the clear statutory language of the INA establishing the noncitizen’s burden in relief-from-removal proceedings.”); Garcia v. Holder, 584 F.3d 1288, 1290 (10th Cir.2009) ("We agree with the BIA that [the SandovalLua ] approach effectively nullifies the statutorily prescribed burden of proof.”). But see Martinez v. Mukasey, 551 F.3d 113, 121 (2d Cir.2008) (approving a "straightforward application of the categorical approach” to cancellation without any consideration of the statutory language).